## UNITED STATES v. MULLINS.

### (Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

### No. 1,014.

1. INTERNAL REVENUE—RECOVERY OF TAX—EFFECT OF NEGLIGENCE OF OFFICERS.

   The negligence of officers in failing to collect a tax on spirits at the proper time, when the spirits were removed from the warehouse, will not preclude the United States from recovering such tax in an action upon the distiller's bond, if it was properly chargeable.

2. SAME—TAX ON DISTILLED SPIRITS—PURCHASE AND WITHDRAWAL BY UNITED STATES.

   Packages of distilled spirits purchased by the United States while in a bonded warehouse, and ordered by the secretary of the treasury to be allowed to be withdrawn "free of tax," under the provisions of Rev. St. § 3464 [U. S. Comp. St. 1901, p. 2284], are thereby withdrawn entirely from the operation of the internal revenue laws, and there is no occasion for the regauging and adjustment of the tax thereon, as upon a withdrawal for private consumption, and the distiller cannot be charged with the tax upon a claimed excess of shrinkage therein.

In Error to the District Court of the United States for the Western District of Kentucky.

R. D. Hill, for the United States.

Charles H. Stoll, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. This cause consists of the consolidation of three actions brought to recover, upon three warehousing bonds executed and delivered by Dwight A. Aiken, as principal, and Alfred R. Mullins, as surety, certain taxes alleged to be due and unpaid on account of a quantity of distilled spirits entered and bonded at the distillery of Aiken, at Lexington, Ky. The bonds were given upon three several entries for the months of March, April and June, respectively, in 1881. On August 9, 1883, the United States having purchased some of the spirits, the secretary of the treasury directed the collector of that district to allow an agent of the United States to withdraw from the warehouse certain numbered packages thereof, "free of tax," for the use of the medical department of the army. The packages mentioned consisted of some of each of the several entries. They were withdrawn accordingly. They were regauged, but there was no provision made for the liquidation of the taxes here in question. All the packages of the several en-

tries were gauged at the time of their deposit in the warehouse, and the tax of 90 cents per gallon assessed against them, as prescribed by law. But at the date of the withdrawal a shortage was found to exist in the packages withdrawn, greater than that which the law permits for deduction on account of shrinkage. This excess of shrinkage amounted to 260 gallons, and the tax thereon, if chargeable, amounted to $234; and it is for this, with penalty and interest, the government seeks recovery. It does not appear whether the government purchased the spirits of Aiken directly, or from some other person. The burden was on the plaintiff to prove that the purchase was of another person, if it claimed any advantage from such a fact.

The defendants filed an answer to the petition, in which, among other things, it was set forth that Mullins was a surety; that the government had a lien on the spirits for all taxes thereon, and owed him the duty to collect all taxes due on the spirits at the time of the purchase; and that, it having failed to do this, he (the surety) was discharged. The petitioner demurred to this answer. The court sustained the demurrer as to Aiken, and judgment was given for the plaintiff. As to Mullins, the demurrer was overruled. At this stage of the cause the government and Mullins agreed upon a statement of facts to be submitted to the court, without a jury, for judgment. The facts agreed upon were those hereinbefore set out. The court rendered judgment for the defendant Mullins, and the plaintiff brings the case here on writ of error.

Apparently, the court rendered its judgment in favor of the surety upon the ground that he was discharged by the failure of the government to deduct the tax on the shrinkage from the price paid for the spirits at the time of the withdrawal. We think that was a mistake, and that if the tax was chargeable, and the officers who conducted the business should have deducted it, but neglected to do so, the government was not responsible for their negligence. If that be so, neither of the obligors upon the bonds was discharged from liability for the tax, if that was a proper charge. Nevertheless, we are of opinion that the judgment in favor of the defendant Mullins was right for other reasons.

At the time the withdrawal was directed to be made, the tax, although there had been a preliminary gauging, had not yet matured; and the question arises whether the withdrawal for the government of the spirits "free of tax" involved the regauging and the adjustment of taxes, or, in other words, whether any further consideration of taxes upon the packages withdrawn was required. The statute under which the withdrawal was made was section 3464, Rev. St. [U. S. Comp. St. 1901, p. 2284], reading as follows:

"The privilege of purchasing supplies of goods imported from foreign countries for the use of the United States, duty free, which now does or hereafter shall exist by provision of law, shall be extended, under such regulations as the secretary of the treasury may prescribe, to all articles of domestic production which are subject to tax by the provisions of this title."

Counsel have not referred us to any statute giving the privilege mentioned in section 3464. The only one, then or thereafter, and

prior to the date of this transaction, existing, which provided for the purchase and withdrawal of imported goods for the use of the United States duty free, of which we are aware, was section 2514, Rev. St. [U. S. Comp. St. 1901, p. 1695], which was as follows:

"All articles of foreign production needed for the repair of American vessels engaged exclusively in foreign trade ·may be withdrawn from bonded warehouses free of duty, under such regulations as the secretary of the treasury may prescribe."

This section plainly imports that the articles purchased are withdrawn thereby from the operation of the statute providing for the payment of a duty. Section 3464 extends this privilege of purchasing "duty free" to all articles of "domestic production" which are subject to tax under the internal revenue act. There is no provision anywhere for the readjustment of the tax, such as takes place on withdrawal on private account, and it would be illogical and inconsistent with the purpose of the statute that there should be any such readjustment, the only object of which would be to ascertain whether the tax should be varied. It seems unreasonable to suppose that, the article having been made "tax free," the statute intended that an inquiry should be made to ascertain what tax would be due on account of the article. Regauging was necessary, of course, in order to measure the purchase price.

The argument by which the collection of the tax in question is supported seems technical and highly artificial. It assumes, without reason, as we think, that when the spirits are purchased by the United States the withdrawal is to take place with the same incidents as upon a withdrawal for private purposes. And upon this assumption it is contended that the theory of the transaction is that the government takes account of the tax, charges it up against the owner according to the original measurement, gives him credit for the tax according to the readjustment, and collects the tax on the shrinkage; imputing the shrinkage to the negligence or fraud of the owner. Of course, it is not difficult to see a certain plausibility in all this, if the premises were sound, but it is built up by construction upon an assumption which we think not well taken. It has been often held that, when a statute providing for taxation is of doubtful construction, the doubt is to be resolved in favor of the taxpayer. U. S. v. Wigglesworth, 2 Story, 369, Fed. Cas. No. 16,690; U. S. v. Isham, 17 Wall. 496, 21 L. Ed. 728; Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012; Twine Co. v. Worthington, 141 U. S. 474, 12 Sup. Ct. 55, 35 L. Ed. 821; Rice v. U. S., 4 C. C. A. 104, 53 Fed. 910; Matheson & Co. v. U. S., 18 C. C. A. 143, 71 Fed. 394. And such is undoubtedly the English rule. Partington v. Attorney General, L. R. 4 H. L. 100. We think that at least it is permissible to say of this doctrine what is said by Cooley in his work on Taxation (page 275 of the second edition):

"But there can be no propriety in construing such a law either with exceptional strictness, amounting to hostility, or with exceptional favor, beyond that accorded to other general laws. It is as unreasonable to sound a charge upon it as an enemy to individual and popular rights, as it is to seek for sophistical reasons for grasping and holding by its authority every subject of taxation which the dragnet of the official force has brought within

its supposed compass. The construction, without bias or prejudice, should seek the real intent of the law; and, if the leaning is to strictness, it is only because it is fairly and justly presumable that the legislature, which was unrestrained in its authority over the subject, has so shaped the law as, without ambiguity or doubt, to bring within it everything it was meant should be embraced."

And it would seem clear that, to warrant the imposition of a tax, the statute should plainly, and not by mere implication from analogies, require it.

Our conclusion upon the subject is that, upon such a withdrawal as took place in the present instance, it is not intended by the statute that the scheme of taxing the article should be pursued, but that the article should upon such withdrawal be freed from all the incidents of taxation.

The judgment will be affirmed.