WRIGHT, Internal Revenue Collector, v. MICHIGAN CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1904.)

No. 1,297.

1. INTERNAL REVENUE—STAMP TAX ON BILLS OF LADING—DUPLICATES.

In paragraph 6 of Schedule A of the war revenue act of June 13, 1898 (30 Stat. 458, c. 448 [U. S. Comp. St. 1901, p. 2304]), which requires a stamp to be affixed to each bill of lading, manifest, etc., "and to each duplicate thereof," the word "duplicate" is to be defined in accordance with the meaning given it generally in business, as one of two instruments, each of which is original, and intended to have the force of an obligation irrespective of the other, and not as meaning merely a copy.

2. SAME.

A railroad company issued bills of lading marked "Original," to each of which was attached a detachable copy, marked as such, and containing a statement thereon that it was not an original bill of lading, but merely a memorandum for filing, as an acknowledgment that a bill of lading had been issued for the goods described. Held, that such copies were not duplicate bills of lading, within the meaning of paragraph 6 of Schedule A of the war revenue act of June 13, 1898 (30 Stat. 458, c. 448 [U. S. Comp. St. 1901, p. 2304]), and were not required to be stamped; nor were they

rendered such by the fact that in some instances the company recognized them in making deliveries to the consignee, waiving the production of the original.

3. EVIDENCE—EXPERT TESTIMONY—CONSTRUCTION OF INSTRUMENT.

The question whether a written instrument is a duplicate of another, within the meaning of a statute, is not one upon which expert testimony is competent, but is one for the court.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Wm. D. Gordon, U. S. Atty., and James V. D. Willcox, Asst. U. S. Atty., for plaintiff in error.

O. E. Butterfield (Henry Russel, of counsel), for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This writ of error brings up the record of a case wherein the Michigan Central Railroad Company brought suit against the plaintiff in error to recover the sum of $6,838.12, which had been levied against the company as an internal revenue tax by the Commissioner of Internal Revenue, and paid by it under protest.

Between July 1, 1898, and June 30, 1901, during which period the internal revenue act of June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286], was in force, the railroad company issued 683,812 bills of lading marked "Original" to shippers of freight over its lines, to each of which was detachably annexed a copy (or duplicate) thereof, marked "Copy," and containing transversely along the left-hand margin thereof the following words:

"Take notice, that this is only a copy of a bill of lading or shipping receipt issued for the property herein described or referred to, and it is not itself to be regarded or considered as a bill of lading or contract of any kind under any circumstances, but merely an acknowledgment that a bill of lading or shipping receipt for said property has been issued."

This was the general form as prepared for use. But as each was issued the following words were inserted in the body of the instrument by a rubber stamp:

"This is not the original bill of lading or shipping receipt, nor a copy or duplicate covering the property named hereon. It is intended solely for filing or record as a memorandum acknowledgment that a bill of lading or shipping receipt has been issued."

A form of shipping order to be filled in by the shipper was also in like manner annexed, and all three were arranged side by side, so as to be folded together, and a carbon interleaf inserted to impress the special matter, such as the name of the shipper, description of the articles, destination, etc., upon the other instruments; the whole being a patented form and arrangement of such instruments. The shipping order was signed by the shipper and retained by the company, and the original bill of lading was signed by the company, and, together with the copy or duplicate, which bore a copy of the company's signature, was given to the shipper. The company put upon each of the instruments, which, for distinction, we will now call the

original, a one-cent stamp, but put none upon the copy or duplicate. And the failure to do this is the cause of action. The case was tried by a court and a jury. Evidence was given to prove the above-stated manner of doing business as between the company and the shipper, which was not disputed, and there was also evidence that in some instances the shippers sent to their consignees the copy or duplicate of the bill of lading, instead of the original, and that the company recognized the same in making delivery; and a witness, who was an internal revenue agent, but had formerly been employed as an official in railroad business, testified, under objection of the plaintiff in that court, that, in his opinion, the copy was a duplicate bill of lading, and performed all the functions of the other. At the close of the testimony, counsel for the respective parties requested peremptory instructions to the jury to render a verdict in favor of their party. The court refused the instruction prayed by counsel for the defendant, and granted that prayed for the plaintiff. A verdict was rendered accordingly, and, judgment having been rendered thereon, this writ of error was sued out by the collector.

The statute under which it is sought to charge the company reads as follows:

"Express and Freight: It shall be the duty of every railroad or steamboat company, carrier, express company, or corporation, or person whose occupation is to act as such, to issue to the shipper or consignor, or his agent, or person from whom any goods are accepted for transportation, a bill of lading, manifest, or other evidence of receipt and forwarding for each shipment received for carriage and transportation, whether in bulk or in boxes, bales, packages, bundles, or not so inclosed or included; and there shall be duly attached and canceled, as in this act provided, to each of said bills of lading, manifests, or other memorandum, and to each duplicate thereof, a stamp of the value of one cent: provided, that but one bill of lading shall be required on bundles or packages of newspapers when inclosed in one general bundle at the time of shipment. Any failure to issue such bill of lading, manifest, or other memorandum, as herein provided, shall subject such railroad or steamboat company, carrier, express company, or corporation or person to a penalty of fifty dollars for each offense, and no such bill of lading, manifest, or other memorandum shall be used in evidence unless it shall be duly stamped as aforesaid." 30 Stat. 459 [U. S. Comp. St. 1901, p. 2304].

The decisive question in the controversy, and the one to which the argument of counsel has been mainly directed, is that of the construction to be given to the word "duplicate" in this paragraph. For the company it is insisted that, as here used, it means another original bill of lading—one having the same legal effect as the other original. The construction contended for in behalf of the government is that stated in an opinion given by the Commissioner of Internal Revenue, which is here transcribed:

"The act does not make it obligatory that the technical bill of lading should be issued in any case. * * * It is not a duplicate bill of lading that is referred to alone, but equally a duplicate manifest, duplicate memorandum, or a duplicate of any other instrument of writing which should contain evidence of receipt and forwarding. The question of tax turns upon the meaning of the word 'duplicate.' Webster's Dictionary, the accepted authority of this department in the definition of words, gives the following—the first being the ordinary meaning, and the second the technical meaning: 'Duplicate. (1) That which exactly resembles or corresponds to something else. Another: Correspondent to the first. (2) Law. An original instrument repeated. A

document which is the same as another in all essential particulars, and differing from a mere copy in having all the validity of an original.' It will be seen that the ordinary meaning of the word 'duplicate' is a copy, and it has been the rule of this office to construe words in statutes according to their ordinary meaning and acceptation, unless the intent of the statute imperatively requires that a technical significance should be given them. * * * I therefore rule that the word 'duplicate,' as used in the paragraph of Schedule A, 'Express and Freight,' includes all copies, and every copy of any instrument evidencing the receipt and forwarding of goods issued by the carrier or his agent must bear a one-cent stamp, and any memorandum made on the same, that it is 'merely a copy,' 'not a bill of lading,' 'not a duplicate,' 'not a contract,' 'not negotiable,' 'merely an acknowledgment,' etc., will have no effect to exempt the copy from taxation as a duplicate." Treasury Dec. Int. Rev. Dept. 1900, pp. 88, 89.

The opinion of the Circuit Court was in accord with the insistence of the company, apparently not accepting the ruling of the Commissioner of Internal Revenue as a correct interpretation of the statute. And with great respect for the opinion of the commissioner, we are notwithstanding constrained to think the ruling of the Circuit Court was right. We cannot help thinking that in the business world there is a plain distinction recognized between a duplicate and a copy, and that the former is understood to be one of two instruments, each of which is original, and intended to have the force of an obligation irrespective of the other, and that a copy is understood to be a transcript of an original; having the form, but not the essence, of an obligation. As the law is addressed to business men and business matters, we may well suppose that Congress intended the word to bear the meaning given it in the sphere of its operation. It is true that in a loose sense the word "duplicate" is sometimes used with the meaning of "copy," but that is only by a license quite common in the use of language. As a rule, the language of a statute is chosen with regard to its fitness for expression. The meaning of the word in legal phraseology is the same as that in its use among business men. It is tersely and correctly stated in 10 Am. & Eng. Encycl. of Law, 318, as follows: " 'Duplicate' is defined as a document which is the same in all respects as some other instrument, from which it is indistinguishable in its essence and operation." And many authorities are there cited in confirmation. A substantially like definition is given of the word in all the law dictionaries in common use. In Burrill's Dictionary, verbum "Duplicate," is given the following ample definition:

"A duplicate is sometimes defined to be a copy of a thing, but, though generally a copy, a duplicate differs from a mere copy, in having all the validity of an original. Nor, it seems, need it be an exact copy. Defined also to be the counterpart of an instrument; but in indentures there is a distinction between counterparts executed by the several parties, respectively, each party affixing his or her seal to only one counterpart, and duplicate originals, each executed by all the parties."

It is the privilege of contracting parties to determine what instrument shall be the repository of their agreement, and that another shall not be. If the original is lost, a copy is admissible in evidence, not because it imports the engagement, but to make proof of an original which did. In the case of duplicates, each is original evidence, and the loss of the other need not be shown. Totten v. Bucy, 57 Md. 450.

If these reasons and authorities were not sufficient, and the matter were still in doubt, we might refer to the rule applicable to this subject, that in such case the statute will be construed favorably to the taxpayer, "because it is fairly and justly presumable that the Legislature, which was unrestrained in its authority over the subject, has so shaped the law as, without ambiguity or doubt, to bring within it everything it was meant should be embraced." In United States v. Mullins, 119 Fed. 334, 56 C. C. A. 238, we applied this rule to another provision of the internal revenue laws, upon the sanction of numerous authorities there cited.

We do not think the reasons which lead to the conclusion already indicated are much affected by the circumstance that upon some occasions the company has recognized these so-called copies in making deliveries to the consignees. Undoubtedly they amounted to acknowledgments that bills of lading of the character recited had been issued, and the company might in some circumstances think it reasonable to waive the production of the actual bill of lading. We agree that if the transaction involved the use of duplicate bills of lading, or of instruments of equivalent legal character, though of slightly different language, the company could not escape the tax by protesting that the instrument was not in fact a bill of lading. And on the other hand, it must be admitted that the company had the right to adopt an otherwise lawful method of doing business, whereby it would not fall under the obligation to pay the tax on a duplicate. The question in every such case would be, what is the essential character of the instrument employed—is it a duplicate, or is it a copy?

Nor do we think the opinion of an expert is competent to determine the construction to be put upon such an instrument. It is for the court to construe it and define its character, and thereupon compare it with the statute.

The views which we have expressed lead to the conclusion that the judgment should be affirmed. It is so ordered.