## DAYTON BRASS CASTINGS CO. v. GILLIGAN, U. S. Collector of Internal Revenue.*

(Circuit Court of Appeals, Sixth Circuit. December 15, 1921.)

No. 3533.

Internal revenue ⚖=9—Manufacturer of munition parts under contract from material furnished held subject to tax; "disposition."

The munition manufacturers' tax, under Act Sept. 8, 1916, is a tax imposed on the business of manufacturing measured by the profits received from the "sale or disposition" of the product, and a manufacturer of parts for fuses under a contract, though from metal furnished by the other party, *held* subject to the tax on the net profits made under the contract; its deliveries thereunder being a "disposition" within the meaning of the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disposition.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Action by the Dayton Brass Castings Company against A. C. Gilligan, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 267 Fed. 872.

Lawrence Maxwell, of Cincinnati, Ohio (J. Sprigg McMahon, of Dayton, Ohio, on the brief), for plaintiff in error.

James R. Clark, U. S. Atty., of Cincinnati, Ohio (R. T. Dickerson, Asst. U. S. Atty., of Cincinnati, Ohio, and Carl A. Mapes, Sol. of Internal Revenue, and P. C. Alexander, Atty., Treasury Dept., both of Washington, D. C., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. In May, 1915, the Canadian Car & Foundry Company had a contract for the sale of shrapnel shells to, or for the use of, the Russian government, and had sublet, to a machine company at Dayton, a contract for making the fuses which were to be parts of the completed shells. The machine company then entered into a contract with the Dayton Brass Castings Company by which the castings company was to receive from the machine company brass ingots and put the same through its foundry, molding the same into small castings, which were by the machine company to be united with other parts to complete a fuse. For this service the castings company was to receive a specified price per pound. This contract was carried on during the year 1916.

By the provisions of title 3 of the act of September 8, of 1916 (39 Stat. 780), and known as the "munition manufacturers' tax," a tax was imposed upon every person manufacturing (among other things) "any part of" fuses, the tax to be 12½ per cent. of the entire net profits actually received or accrued during the year from the sale or disposition of such articles manufactured within the United States. Under this provision, the Commissioner of Internal Revenue imposed a tax upon the castings company, which paid the tax under protest, and brought this suit against the collector to recover the amount paid. The court below heard the case by stipulation, without a jury, and made a finding of facts, and entered judgment for defendant.

Two propositions were considered in the court below. One was that, since plaintiff had to do with only one part of the fuse, it was not a manufacturer within the meaning of the act. In this court plaintiff does not make this contention, but recognizes the applicability of the decisions which hold that one who makes a part which is intended to be and does by the act of another become merged into the kind of munition specified in the act is a manufacturer subject to tax. Carbon Steel Co. v. Collector, 251 U. S. 501, 40 Sup. Ct. 283, 64 L. Ed. 375; Worth Bros. v. Collector, 251 U. S. 507, 40 Sup. Ct. 282, 64 L. Ed. 377.

The plaintiff's present contention is that the plaintiff did not receive profits "from the sale or disposition of such articles," but was in effect only paid for work and labor expended on the property of another. Taking together the sections of this act, we conclude that the tax was imposed upon the business of manufacturing, and was measured by the profits received upon the sale or disposition. If there were no profits, the tax would be nothing. Here profits were undoubtedly received by plaintiff from the carrying out of its contract; and we come to the definition of "sale or disposition." It is clear that plaintiff did not make sales. It is equally clear that plaintiff did make a disposition of these articles. Having received the metal and having cast it into form, plaintiff disposed of the castings and so far disposed of the subject-matter of the contract as to turn these articles over to the machine company and get its pay therefor. It cannot be questioned that what plaintiff did amounted to a "disposition" of the articles within common dictionary definitions of that word. The substantial con-

tention is that under the doctrine of ejusdem generis the statutory phrase can only include dispositions of the character of a sale. This rule may not prevail to the exclusion of the other rule which requires every word and phrase to be given force and meaning, if possible; and no reasonably probable course of conduct by manufacturers has occurred to us or been suggested by counsel which would not be a sale and yet would be the "disposition" contemplated by this statute, if this conduct by this plaintiff should not be so named.

There is no room to suggest that the plaintiff, in making this contract, had any intent to evade this law; the law was not then in existence; but it is none the less important, in construing the law, to observe that, if plaintiff's contention is right, the statute could be evaded in very large part or wholly by just such contracts as this; and the same reasons which led the Supreme Court to conclude (Carbon Steele Co. v. Lewellyn, 251 U. S. 504, 40 Sup. Ct. 283, 64 L. Ed. 375) that the law could not be evaded by dividing the manufacturing process into several steps by separate persons apply with distinct force against plaintiff's contention here.

The line between manufacturing a part and merely furnishing work and labor thereon may be very difficult to draw in some cases; but that contingent difficulty does not induce hesitation where the facts of a case do not bring it near the line; and we are clear that, while this transaction might be called, in the abstract, either "manufacture" or "work and labor," yet that, if it is to be classified as one rather than the other, it must be the former.

In reaching our conclusion, we put no dependence on the claim that plaintiff had a lien upon the material, which gave an interest in the title, and therefore made its release more directly in the nature of the sale of an interest. The claim is at least of doubtful applicability to the facts of this case concerning delivery, and to sustain it is unnecessary in order to make out a defense.

Nor do we overlook the suggestion that the cost of the raw material is one of the things which section 302 prescribes for deduction from the gross profits in computing net profits; but even if—as here—there was no cost of raw material, it does not follow that there was no sale or disposition and no tax; it follows only that there is nothing to be deducted for that cost. The same section provides for the deduction of several other items of expense or cost, which, in a given case, may not exist at all. Their nonexistence does not demonstrate that there can be no tax.

It is true that a taxing statute should not be construed to materialize a tax not clearly intended (Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211; U. S. v. Mullins [C. C. A. 6] 119 Fed. 334, 56 C. C. A. 238); but we think the intent is here clear enough. Every reason which would justify taxing a sale seems to justify a tax reaching this "disposition," and Congress could not well have chosen a more completely inclusive term.

The judgment is affirmed.