# WORTH BROTHERS COMPANY *v.* LEDERER, COL- LECTOR OF INTERNAL REVENUE FOR THE FIRST DISTRICT OF PENNSYLVANIA.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 525. Argued January 8, 9, 1920.—Decided March 1, 1920.

Rough shell forgings, sold by their manufacturer to another having a contract to deliver completed shells to the French Government, are "parts" of shells, within the meaning of the Munitions Tax Act of September 8, 1916, c. 463, § 301, 39 Stat. 780, the profits from which are taxable under the act to the manufacturer of the forgings. P. 509.

258 Fed. Rep. 533, affirmed.

THE case is stated in the opinion.

*Mr. A. H. Wintersteen,* with whom *Mr. William Wallace, Jr.,* was on the brief, for petitioner.

*Mr. Assistant Attorney General Frierson* for respondent.

*Mr. E. G. Curtis,* by leave of court, filed a brief as *amicus curiæ.*

*Mr. J. Sprigg McMahon,* by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE MCKENNA delivered the opinion of the court.

This writ is directed to the judgment of the Circuit Court of Appeals affirming a judgment of the District Court for Lederer, to whom we shall refer as the Collector,

in an action by petitioner to recover from him the sum of $74,857.07 exacted as a tax under § 301 of the Munitions Manufactures Tax Act of September 8, 1916, 39 Stat. 780, and paid by petitioner under protest.

A detail of the imposition of the tax and the protest of its payment are unnecessary to give. The other facts were stipulated and it appears from the stipulation that during the taxable year 1916 petitioner made the steel for and did the forging on certain shell bodies under an order from the Midvale Steel Company, to enable the latter company to carry out a contract which it had with the Government of France for certain explosive shells. The steel was made and the forging done by petitioner in accordance with specifications required by the French Government, which specifications were attached to the order from the Midvale Steel Company to petitioner.

Inspectors employed by the French Government inspected the work done by petitioner, testing the steel and examining the forgings as they passed through petitioner's hands. "Up to the time when the blooms of steel were sliced partly through into billets, the right of inspection was exercised by the French Inspector-in-Chief, only whenever he desired to exercise it." Some forgings were rejected and those that were passed were so marked by the inspector. This was done in accordance with an understanding between petitioner and the Midvale Steel Company.

The profits, upon which the tax as claimed in this case was imposed, were derived solely from the sale of the above mentioned forgings.

The Munitions Tax Act provides (§ 301, c. 463, 39 Stat. 781) "that every person manufacturing" certain articles and "shells" "or any part of the articles mentioned . . . shall pay for each taxable year, in addition to the income tax imposed by Title I, an excise tax of twelve and one-half per centum upon the entire net

profits actually received or accrued for said year from the sale or disposition of such articles manufactured within the United States."

The question is the simple and direct one whether a shell forging under the stipulation and evidence is "any part" of a shell within the meaning of the law. The argument of petitioner, in support of a negative answer, is very diffuse, pressing considerations which we do not think are relevant.

A shell is a definite article, constituted of materials of a certain kind and quality, assembled and fitted and finished so as to be adequate for its destructive purposes. Is not every element (we use the word for want of a better) in the aggregation or composition or amalgamation (whichever it is), of a shell, a part of it? If not, what is it? And what is the test to distinguish a part from not a part? We use the negative as an antithetic word does not occur to us to express that something necessary to constitute a thing is not a part of it. Petitioner surmounts the difficulty by contending that the law by its words "any part" of any of the "shells," implies a substantially finished part, as related to the whole structure and to the purpose it is intended to subserve. "Otherwise," counsel say, "the word [part] loses all precision, and becomes equivalent to the words 'ingredient' or 'material composing or making up.'" And to sustain this view they take us to the dictionaries and to an enumeration of the processes to which the material must be subjected to make a forging, and those afterwards to prepare it for a shell. In this enumeration letters of the alphabet are used of which "A, B, C and H represent stages of development of the material prior to delivery" to the Midvale Company, and "D, E, F, G, I and K represent stages of development by Midvale after delivery to it." It is quite obvious of course, as counsel declare, that the forgings were "not *shells;* since a shell is a composite structure of several parts." But

counsel go farther and say that the forgings were "not *parts of shells* in any practical or legal sense, because their development was so far short—80%—of the point where they could be related to or combined with any other component of the shell structure, that they could not satisfy any fair meaning of the shell body unit as entering into the composite shell as a whole." We give counsel's words because we fear that by paraphrasing them we might not correctly represent their meaning and contention.

We reject the contention. Congress did not intend to subject its legislation to such artificialities and make it depend upon distinctions so refined as to make a part of a shell not the taxable "part" of the law. Besides petitioner understates its work. It did not deliver raw material to the Midvale Company. Certain processes had been performed on the material giving it a shape adapted to its destination. It was made cylindrical, hollow, with one end closed. It was rough, it is true, but an advance upon the raw material.

The progressive processes need not be enumerated. The lower courts have enumerated them, and the Court of Appeals describing them said that the "steps" six in all, were "progressive advances toward the chemical constituents, the shape, and the dimension required by, and essential to, the manufacture of shells in compliance with the contract." And the court distinguished the effect of the steps. With the fourth, it was said, the inspection by the French Government began; the fifth took the fluid metal (the result of the second step) from the possibility of use for general commercial purposes and by a forging process restricted the steel to the field of use for shells. By the sixth step this forging "was drawn to a length, and to an inside and outside diameter, which enabled the Midvale Steel Company to thereafter carry forward its twenty-nine progressive steps, which, with the six" of

petitioner "were required . . . to complete the manufactured shell of the contract."

"Manifestly," as counsel for the Collector says, "the shell body was not completely manufactured by either of the companies which were engaged in its production" but "by the two acting together." And each therefore is liable for the profit it made, and judgment is

*Affirmed.*

MR. JUSTICE DAY and MR. JUSTICE VAN DEVANTER dissent.