**MALLEY, Collector, etc., v. WALTER BAKER & CO., Limited.**

(Circuit Court of Appeals, First Circuit. May 17, 1922.)

No. 1547.

**1. Statutes ⬅245—Tax acts not construed strictly as penal statutes.**

Though reasonable doubts in a tax statute must be resolved in favor of the taxpayer, such statutes are not penal statutes, in the sense that requires them to be construed with great strictness.

**2. Statutes ⬅215—Court should attempt to ascertain intent from circumstances surrounding Legislature at time of enactment.**

In ascertaining the true construction of a statute, the court should put itself in the position of Congress when it enacted the law, and, from the circumstances and surroundings then existing, seek to ascertain, from what was meant to be done, how best to construe and apply what was done.

**3. Internal revenue ⬅11—Sweet chocolate, intended to be consumed as candy, is subject to tax on candy.**

Sweet chocolate, composed of more than 50 per cent. of sugar and put up in packages showing an intention that it should be consumed in the same way ordinary candy is consumed, without further manufacture, is subject to the excise tax on candy imposed by Revenue Act 1918, tit. 9, § 900 (Comp. St. Ann. Supp. 1919, § 6309½a), though chocolate and sugar are both foods, and the regulation of the Commissioner of Internal Revenue to that effect was valid.

**4. Statutes ⬅219—Regulation of department charged with administration of act has great weight in construing ambiguous statute.**

If ambiguity is found in a statute, or if it is necessary to determine a fact on which the operation of a statute is made to depend, the regulations

---

made by the department charged with the administration of the act are to be given great, and sometimes practically controlling, weight.

. **Internal revenue** ⊙→38—**Taxpayer has burden of proving tax collected was excessive.**

In a suit to recover an excise tax on sweet chocolate imposed as a tax on candy, the taxpayer has the burden of proving that the taxes collected were illegal, so that the collector was entitled to have submitted to the jury the question of what portion of the chocolate on which the tax was levied was used for cooking or domestic purposes, so as not to be subject to the tax, and what portion was intended for consumption as candy, and therefore subject to the tax.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by Walter Baker & Co., Limited, against John F. Malley, formerly Collector of Internal Revenue, to recover excise tax paid under protest. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass., and Charles T. Hendler, of Washington, D. C. (Robert O. Harris, U. S. Atty., of Boston, Mass., and Carl A. Mapes, Solicitor of Internal Revenue, and Terry A. Lyon, Attorney of Treasury Department, both of Washington, D. C., on the brief), for plaintiff in error.

Arthur J. Santry, of Boston, Mass. (Harvey H. Bundy and Putnam, Bell, Dutch & Santry, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The ultimate question in this case is whether all, or any, of the sweet chocolate manufactured and sold by the defendant in error, herein called the plaintiff, is subject to a 5 per cent. excise tax as candy, under the provisions of title 9, § 900, of the Revenue Act of 1918 (40 Stat. 1122 [Comp. St. Ann. St. Supp. 1919, § 6309⅘a]), and the regulations made by the Commissioner of Internal Revenue under authority granted by this act.

Between February 24 and August 31, 1919, the plaintiff made sales of such chocolate aggregating $635,137.30, and under protest paid the 5 per cent. tax thereon, amounting, with interest to December 5, 1921, to $35,232.25. Suit to recover this tax came on for trial before the District Court with a jury. After much evidence on both sides had been taken, much of it having little or no bearing on the real issue, the court below found and ruled that the word "candy" had no special trade significance, different from its meaning in ordinary speech; that the regulations of the Commissioner hereinafter set forth were invalid, as an attempt to extend the natural meaning of the language of the statute; that chocolate is an independent substance, used directly for food, and, though used in the manufacture of candy, is not candy, within the meaning of this tax act: and ordered a verdict for the plaintiff in the full amount claimed. The case comes here on writ of error.

The Revenue Act, supra, provides:

⊙→For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"There shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages for the prices so sold or leased: * * * (9) * * * Candy, 5 per centum."

The Commissioner of Internal Revenue, under the usual grant of power found in such statutes, promulgated regulations duly approved on May 1, 1919, by the Secretary of the Treasury. Article 22 of these regulations is as follows:

"*Candy.*—Candy, within the meaning of the act, includes *chocolate creams*, bonbons, gum drops, jelly drops, jelly beans, imperials, caramels, stick candy, lozenges, taffies, candy kisses, wafers, fudges, or Italian creams, nougats, peanut brittle, sugared almonds, *chocolate covered fruits*, and nuts, glace or candied fruits and nuts, popcorn and other cereals and cereal products mixed with or covered with molasses, sugar or other sweetening agent, hard candies, plain and chocolate covered marshmallows, candy cough drops and sweetened licorice not taxed as cough drops, *sweet chocolate and sweet milk chocolate whether plain or mixed with fruit or nuts; and all similar articles however designated.* It does not, however, include cereal breakfast foods, cake and pastries, *nor bitter chocolate which needs the addition of sugar before it becomes pleasing to the taste.* If a manufacturer of glace or candied fruits at the time the goods are shipped or sold (whichever is prior) has in his possession an order or contract of sale with certificate of the purchaser printed thereon or in writing and permanently attached thereto showing that such fruits so purchased are to be used in the manufacture of food products, such as ice cream, cakes, and pastries, the sale thereof shall not be taxable. Where a manufacturer of candy sells in connection with the sale of his own product candy which he has bought from another manufacturer, and on which he has performed no further process of manufacture, the tax attaches only to such portion of the goods sold as have been manufactured by him." (Particularly pertinent words we have italicized.)

On May 10, 1919, the Commissioner ruled as follows:

"Sweet chocolate sold in parcels of such size and shape that it is commonly purchased and consumed as candy by the general public is taxable as candy, but sweet chocolate sold in large packages not as candy, but intended for further manufacturing purposes, is not taxable, provided the manufacturer has in his possession a certificate of the purchaser in writing showing that the chocolate so purchased is to be used for further manufacturing purposes."

This ruling applies to sweet chocolate the exemption procedure applicable under the regulation, supra, to glace and candied fruits.

Article 22 of the Regulations was revised in December, 1920, so that, while still covering affirmatively "sweet chocolate and sweet milk chocolate, whether plain or mixed with fruit or nuts," it by the addition of paragraph (b) excluded—

"sweet chocolate, glace or candied fruits or nuts sold by the manufacturer used under circumstances where it is obvious from the condition of the product, method of packing or from other facts in connection with the sale that it will not be consumed in the form in which it is then sold."

The Commissioner, on January 25, 1921, in response to inquiry from the plaintiff, applied in detail the regulation to the plaintiff's business, as disclosed, and also ruled that—

"Upon the submission of evidence from the taxpayer, claims already rejected will be reopened and allowed in the amount representing tax paid on products herein held not taxable. Action on pending claims will be held in abeyance for further evidence."

It thus appears that, even after suit brought, the department was ready to entertain claims for taxes paid on sweet chocolate "sold for use in a form other than that in which it is sold by the manufacturer."

In the plaintiff's declaration, it admitted in each of the five counts— referring to the certificate called for by the ruling of May 10, 1919, supra—that it had "no such certificates with respect to the chocolate upon the sale of which the tax was assessed, and says that it was impossible for the purchaser to determine at the time of the sale of such chocolate whether it would be used for further manufacture or not." The record does not support this allegation of the impossibility of obtaining such certificates. No reason is apparent why in much, if not all, of the business such certificates could not have been obtained. But this was not made the exclusive method of distinguishing sweet chocolates intended for consumption, as such, from sweet chocolate intended as a food ingredient; any reasonable method of showing the determinative facts was available to this plaintiff.

At the trial it was agreed that:

"An analysis of the various brands of chocolate upon which the tax in suit was paid would show the following percentages of sugar:
  "Between 60 and 65 per cent. in Caracas chocolate.
  "Between 50 and 55 per cent. in German's chocolate.
  "Between 50 and 55 per cent. in Century and Vanilla chocolate.
  "Between 30 and 35 per cent. in Dot chocolate.
  "Between 50 and 55 per cent. in Eagle chocolate."

It was also agreed that an annexed schedule showed the sales of the various brands from February 24 to April 30, 1919. Sales for the months of May to August, inclusive, were shown only in the aggregate. Assuming, as we fairly may, that the schedule for February, March, and April is fairly typical of the whole period of about 7 months, it is clear that about half of the sales in question consisted of the Caracas sweet chocolate, which contains from 60 to 65 per cent. of sugar, and that the sales of the Dot chocolate, containing only from 30 to 35 per cent. of sugar, were not more than about 10 per cent. of the aggregate. All the other brands contained from 50 to 55 per cent. of sugar. The necessary inference, therefore, is that the sweet chocolates sold, taken as a mass, were considerably more than half sugar.

It is matter of common knowledge, and the evidence and numerous exhibits also show, that this sweet chocolate is manufactured in cakes and bars, adapted for consumption as candy, packed in convenient cartons for sale as candy, advertised as "delicious for eating," or "excellent as a confection," and sold in large quantities over the candy counters, and consumed, at least in substantial part, in the form put out by the manufacturer for such consumption. Plainly, it is a mixture, about half and half, of sugar and chocolate, sometimes with flavoring material like vanilla, and in the form in which it is put up and marketed intended to cater to the same tastes and to appeal to the same class of consumers as are chocolate bonbons (barely distinguishable in composition) and other well-known forms of candy or confectionery. Sugar, "the appeal to the sweet tooth," is, of course, the basic ingredient in all candy. Sweet chocolate is a most toothsome form of sugar compound.

Plaintiff's chief contention is that this sweet chocolate product is, in its entirety, food, and not candy, within the fair meaning of the act. This view was adopted by the District Judge, who held it all exempt from the tax, denying the defendant's request to submit to the jury an issue "as to the proportion of the total sales of each exhibit which was used for domestic or cooking purposes."

[1] We think this was error. We construe the statute as the Commissioner construed it. While, as it is a tax statute, reasonable doubts must be resolved in favor of the taxpayer, we can see no such reasonable doubts as to the legislative intent to tax such products as sweet chocolate when manufactured, and sold for consumption in the form sold, and not for cooking or domestic purposes.

Revenue Acts are not penal statutes. See Cliquot's Champagne, 3 Wall. 114, 145, 18 L. Ed. 116, where the court said:

"Revenue laws are not penal laws, in the sense that requires them to be construed with great strictness in favor of the defendant. They are rather to be regarded as remedial in their character, and intended to prevent fraud, suppress public wrong, and promote the public good. They should be so construed as to carry out the intention of the Legislature in passing them, and most effectually accomplish these objects."

To the same effect is the case of United States v. Hodson, 10 Wall. 395, 406, 19 L. Ed. 937, where Mr. Justice Swayne said:

"Revenue statutes are not to be regarded as penal, and therefore to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment."

[2] The Circuit Court of Appeals for the Third Circuit, in Carbon Steel v. Lewellyn, 258 Fed. 533, 534, 169 C. C. A. 473, 474, stated the rule as follows:

"In ascertaining the true construction of the law, and thus carrying out its purpose, this court must necessarily put itself in the position of Congress when it enacted the law, and from the circumstances and surroundings then existing, and the general purpose then in view, seek to ascertain, from what was meant to be done, how best to construe and apply what was done."

See, also, same case, 251 U. S. 501, 40 Sup. Ct. 283, 64 L. Ed. 375; Worth Brothers v. Lederer, 251 U. S. 507, 40 Sup. Ct. 282, 64 L. Ed. 377; Baltimore Talking Board Co., Inc., v. Miles (D. C.) 273 Fed. 531; Citizens Bank v. Parker, 192 U. S. 73, 24 Sup. Ct. 181, 48 L. Ed. 346; American Security Co. v. District of Columbia, 224 U. S. 491, 32 Sup. Ct. 553, 56 L. Ed. 856.

[3] Looking at the statute as a whole, it is clear that Congress, impelled by the expenses of the World War, intended to lay a pretty heavy tax on luxuries as distinguished from necessaries. Candy, manufactured and consumed in tremendous quantities, because of the well-known and extraordinary American appetite for sweets, was regarded as a luxury.

But this sweet chocolate product consists, as already noted, more than half of sugar. Sugar is far more important as a food element than is chocolate. Sugar is admittedly the basic ingredient of candy. To hold, as the court below held, that sweet chocolate is not candy, because chocolate is also food, falls logically little short of holding that candy is not

candy because sugar·is also food. Nuts and practically all the other ingredients of candy, except perhaps some of the flavoring materials, are also food. We cannot agree with the court below that sweet chocolate is not candy simply because made up about half and half of chocolate and sugar, each of which is a food. Some other test must be found. Sugar compounds are admittedly candy, when manufactured, advertised, sold, and consumed as candy, and not as a food ingredient. The distinction turns, not so much on the composition of the article, as on the way or form in which it is sold, and upon the use made of it by its purchasers.

We think the court below erred in holding invalid this distinction made by the Commissioner as to sweet chocolate. The plaintiff's contention, in effect adopted by the District Court, that the tax was on the product—sweet chocolate—and applicable to *all* or to *none* of it, is untenable. The use or destination of the product may well have been made by Congress the basis of classification for taxing purposes. Coal and diamonds are chemically much alike; practically and for tax purposes they are radically different. We think the test applied by the Commissioner was consonant with the statute. Apart from the weight given department rulings and regulations in such cases, our construction of the act conforms to that of the Commissioner; it seems to us fairly plain.

[4] But it is elementary that, if ambiguity is found in a statute, or when it is necessary to determine a fact upon which the operation of a statute is made to depend, the regulations made by the department charged with the administration of the act are to be given great, sometimes practically controlling, weight. See Edwards, Lessee, v. Darby, 12 Wheat. 206, 212, 6 L. Ed. 603; Houghton v. Payne, 194 U. S. 88, 96, 24 Sup. Ct. 590, 48 L. Ed. 888; Komada v. United States, 215 U. S. 392, 30 Sup. Ct. 136, 54 L. Ed. 249; Jacobs v. Prichard, 223 U. S. 200, 214, 32 Sup. Ct. 289, 56 L. Ed. 405; Houston v. St. Louis Independent Packing Co., 249 U. S. 479, 39 Sup. Ct. 332, 63 L. Ed. 717; Noble v. Union River Logging R. R. Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Coopersville Co-op. Creamery Co. v. Lemon, 163 Fed. 145, 89 C. C. A. 595; United States v. Healey, 160 U. S. 136, 141, 16 Sup. Ct. 247, 40 L. Ed. 369; Robertson v. Downing, 127 U. S. 607, 613, 8 Sup. Ct. 1328, 32 L. Ed. 269. Cf. Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 Sup. Ct. 155, 157 (64 L. Ed. 297), where the court, by Mr. Justice Clarke, said:

"It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law, if it be not in conflict with express statutory provision"—citing United States v. Grimaud, 220 U. S. 506; United States v. Birdsall, 233 U. S. 233, 251, 34 Sup. Ct. 512, 58 L. Ed. 930; United States v. Smull, 236 U. S. 405, 409, 411, 35 Sup. Ct. 349, 59 L. Ed. 641; United States v. Morehead, 243 U. S. 607, 37 Sup. Ct. 458, 61 L. Ed. 926.

It comes to this: Congress intended that various compounds of sugar and other ingredients, practically all of which are also food ingredients, should, when compounded, sold, and consumed as candy, a luxury, be subjected to this tax. The distinction undertaken to be

made by the department that sweet chocolate should be taxed when put up and sold in such form as to indicate that it was to be consumed as candy is consumed, and not taxed when it was obvious from the packing or other circumstances surrounding the transaction that it was to be merely an ingredient for further manufacture is a sound distinction. At any rate, unless this distinction is made, it is difficult to see how candy can be taxed at all; for, as already stated, candy is in its main characteristics sugar compounds, intended for luxury, taste-gratifying, consumption. When somewhat less than half of a toothsome sweet is chocolate—also a common ingredient of candy compounds—the resultant is not transmuted into food, within the fair meaning of this tax statute, if the compound is sold and consumed as confectionery or. candy.

[5] The eighteenth assignment of error brings before us the refusal of the court below to submit to the jury the question of what proportion of the sweet chocolate in question was used for cooking or domestic purposes. This assignment must be sustained. The burden of proof is on the plaintiff to show that the taxes collected were illegal or the assessments excessive. Anderson v. Farmers' Loan & Trust Co., 241 Fed. 322, 154 C. C. A. 202; New York Life Ins. Co. v. Anderson (C. C. A.) 263 Fed. 527, 530; Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672; Bailey v. Railroad Co., 22 Wall. 604, 638, 22 L. Ed. 840; Black, Fed. Cases, § 547; Schafer v. Craft, Collector (D. C.) 144 Fed. 907, 909; South Pacific v. Lowe, Collector (D. C.) 238 Fed. 847, 849; Cohen v. Lowe, Collector (D. C.) 234 Fed. 474, 476.

The plaintiff is not entitled to recover more than the amount that it can show it paid as a tax on such portions of the product in question as were not sold and used as candy within the meaning of the Department's regulation.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers costs in this court.