MALLEY v. HOWARD et al. (No. 1551.) CASEY v. HOWARD et al. (No. 1552.) MALLEY v. CROCKER et al. (No. 1553.) MALLEY v. HECHT et al. (No. 1554.)

(Circuit Court of Appeals, First Circuit. June 6, 1922.)

Nos. 1551–1554.

1. **Internal revenue ⚭4—Reasonable doubts in statutes resolved in favor of taxpayer, but government not crippled by unnatural construction.**

   In applying tax statutes, reasonable doubts must be resolved in favor of the taxpayer; but revenue acts are not penal statutes, and the government is not to be crippled by strained and unnatural construction of tax statutes fairly plain.

2. **Statutes ⚭217—History of legislation lends emphasis to initial impression of its import.**

   The history of legislation lends emphasis to the initial impression of its import, for it is elementary that, when language used in an earlier statute has in application received judicial construction, change in language in later analogous legislation imports legislative purpose to attain a different result.

3. **Internal revenue ⚭9—A "Massachusetts Trust" held subject to tax on capital stock, imposed on "associations" by Revenue Acts of 1916 and 1918; "corporation."**

   A "Massachusetts Trust," constituting an arrangement whereby the legal title to property is conveyed to trustees, who execute a declaration of trust to hold and manage it for the benefit of holders of transferable certificates issued by trustees, is subject to the tax on capital stock imposed by Revenue Act 1916, § 407, providing for payment of tax by "every corporation, joint-stock company, or association * * * having a capital stock represented by shares," and Revenue Act 1918, § 1000 (Comp. St. Ann. Supp. 1919, § 5980n), providing that in lieu of such tax imposed by such act of 1916 every domestic corporation shall pay annually a special excise tax, and section 1 (section 6371¼a), defining the term "corporation" to include associations, stock companies, and insurance companies; such a trust being an "association," and Congress intending to include nonstatutory organizations, even though the certificates or stock have no par value.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Association; Corporation.]

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Actions at law by Louis Hecht, Jr., and others, trustees, by Arthur L. Howard and others, trustees, and by Alvah Crocker and others, trustees, respectively, against John F. Malley, formerly Collector of Internal Revenue, and by Arthur L. Howard and others, trustees, against Andrew J. Casey, acting Collector of Internal Revenue. From adverse judgments (Hecht v. Malley, 276 Fed. 830), John F. Malley and Andrew J. Casey bring error. Reversed and remanded.

S. Milton Simpson, Sp. Atty. Internal Revenue Department, of Washington, D. C. (Robert O. Harris, U. S. Atty., of Boston, Mass., and Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass., Carl A. Mapes, Solicitor of Internal Revenue, and Malcolm A. Coles, Sp. Atty. Internal Revenue Department, both of Washington, D. C., on the brief), for plaintiff in error in all four cases.

⚭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward F. McClennen, of Boston, Mass. (William H. Dunbar, Bernhard Knollenberg, and Allison L. Newton, all of Boston, Mass., on the brief), for defendants in error Howard, Hecht, and others.

Harrison M. Davis and Felix Rackemann, both of Boston, Mass. (Dunbar & Rackemann, of Boston, Mass., on the brief), for defendants in error Crocker and others.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These cases involve the validity of taxes imposed upon business organizations, commonly known as "Massachusetts Trusts," under the Revenue Acts of 1916 (39 Stat. 789) and 1918 (40 Stat. 1057). Nos. 1551 and 1552 involve the Haymarket Trust, and we treat them as one case. The cases were argued as a group and may be conveniently dealt with in one opinion.

The chief business of the Haymarket and Hecht Trusts is that of owning, managing, and leasing real estate and distributing the net income to its shareholders. These concerns deny that they are associations within the meaning of the statutes.

The Crocker Trust is a large manufacturing concern. It admits that it is an association within the meaning of the statutes, but it claims immunity from the tax on the ground that it has no capital stock within their meaning.

The court below sustained the plaintiff's contentions in each case, and the government brought the cases here on writs of error.

The fundamental question is whether the plaintiffs are associations having a capital stock represented by shares, within the meaning of these provisions. So far as the issues in these cases are concerned, the provisions of the two statutes seem to us to be equivalent, for there is now presented no controverted question as to the amount of any tax; we therefore need not consider the different amounts exempt under the two statutes or the retroactive and substitutional effect of the 1918 statute.

The act of 1916 (section 407) levies a tax on associations "now or hereafter organized in the United States for profit and having a capital stock represented by shares * * * with respect to the carrying on or doing business by such * * * association * * * equivalent to 50 cents for each $1,000 of the fair value of its capital stock, and in estimating the value of capital stock the surplus and undivided profits shall be included. * * * The amount of such annual tax shall in all cases be computed on the basis of the fair average value of the capital stock for the preceding year"—with an exemption not now material.

Act 1918, § 1 (Comp. St. Ann. Supp. 1919, § 6371¼a), includes associations under the term "corporation," and in section 1000a (section 5980n), provides for an annual "special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year," etc. "In estimating the value of capital stock the surplus and undivided profits shall be included."

Both acts are conceded to levy an excise tax with respect to doing business; the amount of the tax being measured by the average value of the capital stock, including any surplus and undivided profits as a part thereof. All the plaintiffs agree that they are doing business within the meaning of these acts.

[1] While we recognize that in applying this and every other tax statute reasonable doubts must be resolved in favor of the taxpayer (Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211), yet revenue acts are not penal statutes; the government is not to be crippled by strained and unnatural construction of tax statutes fairly plain. Cliquot's Champagne, 3 Wall. 114, 145, 18 L. Ed. 116; United States v. Hodson, 10 Wall. 395, 19 L. Ed. 937; Worth Bros. v. Lederer, 251 U. S. 507, 40 Sup. Ct. 282, 64 L. Ed. 377.

Taxation of this general kind began with the passage of Act Aug. 5, 1909 (36 Stat. 11, 112), which imposed a tax "on every corporation, joint-stock company or association, organized for profit and having a capital stock represented by shares * * * now or hereafter organized under the laws of the United States or of any state or territory * * * with respect to the carrying on or doing business by such corporation, joint-stock company or association * * * equivalent° to one per centum upon the entire net income over and above $5,000," etc.

This statute, passed before we had the Sixteenth Amendment, was attacked as an income tax, and therefore unconstitutional. But the Supreme Court held that it was not an income tax, and sustained it as an excise tax. Flint v. Stone Tracy Co. (1911) 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. It was measured by the income, not, as under the present law, on the capital used.

In Eliot v. Freeman, 220 U. S. 178, 31 Sup. Ct. 360, 55 L. Ed. 424, the court at the same time held the act of 1909 not to cover two typical Massachusetts real estate trusts, on the ground that "the language of the act, 'now or hereafter organized under the laws of the United States,' etc., imports an organization deriving power from statutory enactment." Organized as purely nonstatutory, they were exempt.

The gist of the present case is whether the statutes of 1916 and 1918 are, as the plaintiffs contend, to be given the same interpretation in favor of exempting such organizations as was given by the Supreme Court to the act of 1909.

The government, on the other hand, contends that the language of the acts is plainly applicable to such organizations, that the history of the legislation shows that Congress intended to avoid the result reached in Eliot v. Freeman, supra, and that there are no applicable decisions of the courts supporting the plaintiffs' position. We think the government is right, and that the court below erred in holding that such organizations are not associations within the meaning of these Revenue Acts.

The language of the statutes, supra, seems so plain that repetition and paraphrasing would add nothing.

[2] The history of the legislation lends emphasis to the initial impression of its import. For it is elementary that, when language used

in an earlier statute has in application received judicial construction, change in language in later analogous legislation imports legislative purpose to attain a different result. If Congress had intended the acts in question to have the restricted application given by the Supreme Court to the act of 1909, there was no conceivable reason for changing the words "organized under the laws of the United States or of any state," etc., to "organized in the United States."

[3] We think it plain that by this change Congress intended in the later acts to include nonstatutory organizations, and to avoid the restriction found by the Supreme Court in the words of the 1909 act. We cannot accord with the learned District Judge in his view that "it is hard to discover any substantial distinction between the scope of" the act of 1909 and the acts of 1916 and 1918 "as far as 'associations' are concerned." We think there is a vital and controlling distinction.

Eliot v. Freeman was decided in 1911. In 1913 an income tax act was passed (38 Stat. 114, 166, 172), imposing such tax on "every corporation, joint-stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships." The original case of Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, the plaintiffs' chief reliance, arose under this statute. Sitting as District Court, Judge Bingham, in July, 1917, held the Wachusett Realty Company, the predecessor of the present Crocker Association, a trust, according in that regard with Judge Hale in a decision made on May 23, 1914, in the case of Crocker v. Crocker.

But in this court (Crocker v. Malley, 250 Fed. 817, 163 C. C. A. 131) the organization was held an association within the meaning of the statute. The Supreme Court reversed this court, adopting the view of the District Court. The decisions, both in the Supreme and District Courts, against the government, turned upon the fact that the shareholders had no real control over the trust estate; so that it therefore fell within the doctrine of Williams v. Milton, 215 Mass. 1, 102 N. E. 355, from the opinion in which Mr. Justice Holmes quoted (249 U. S. 223, 232, 39 Sup. Ct. 270, 271, 63 L. Ed. 573, 2 A. L. R. 1601), as follows:

"There can be little doubt that in Massachusetts this arrangement would be held to create a trust and nothing more. The certificate holders * * * are in no way associated together, nor is there any provision in the [instrument] for any meeting to be held by them. The only act which (under the [declaration of] trust) they can do is to consent to an alteration * * * of the trust,' and to the other matters that we have mentioned. They are confined to giving or withholding assent, and the giving or withholding it 'is not to be had in a meeting, but is to be given by them individually.' The sole right of the cestuis que trust is to have the property administered in their interest by the trustees, who are the masters, to receive income while the trust lasts, and their share of the corpus when the trust comes to an end.'"

The trustees of the Wachusett concern held title, subject to a long lease, to eight mills, and to the stock of the corporation operating these mills, and distributed the net income to the eight beneficiaries of the trust. The trustees were not managing the mills; the organization was not a business enterprise within the normal use of that term. The

beneficiaries were "admitted not to be partners in any sense, * * * have no joint action or interest and no control over the fund." 249 U. S. 234, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601. The court, in referring to the phrase in the statute "no matter how created or organized," says:

"The trust that has been described would not fall under any familiar conception of a joint-stock association, whether formed under a statute or not"— citing Smith v. Anderson, 15 Ch. Div. 247, 273, 274, 277, 282.

Moreover, the tax then sought to be sustained was levied, at least in substantial part, in respect of dividends received from a corporation that itself was taxable upon its net income. The court therefore held that, "as the plaintiffs undeniably are trustees, if they are subjected to a double liability, the language of the statute must make the intention clear. Gould v. Gould, 245 U. S. 151, 153."

It is thus apparent that the Wachusett Realty Company was in organization and purpose but an ordinary inter vivos trust for eight beneficiaries; also that the tax sought to be imposed would have resulted in double taxation, never easily inferred. It was in nature, and in relations to its shareholders and to society at large, radically different from the plaintiffs' organizations, described below. That decision lends no support to the plaintiffs' contention.

Next in chronological order was the stamp tax provision of Act Oct. 22, 1914 (38 Stat. 745, 759). This act imposed a stamp tax on "each original issue * * * of certificates of stock by any * * * association, company, or corporation." This court in Malley v. Bowditch, 259 Fed. 809, 170 C. C. A. 609, 7 A. L. R. 608, held such tax applicable on the original issue of certificates or shares of the Pepperell Manufacturing Company, "a manufacturing company organized in the form of a trust under the common law, and deriving none of its rights, qualities or benefits from any statute." The crucial question in that case, as in the case at bar, was whether the organization was an association within the meaning of the federal tax act. The case is, in essentials, difficult, if not impossible, to distinguish from the cases at bar. The cogent opinion of Judge Brown is applicable to most aspects of the present problem. It might well be quoted from at length.

The Revenue Acts of 1916 and 1918, supra, both in their income and excise tax provisions, adopt the same broad phrasing as to joint-stock companies or associations "organized in the United States," thus showing a continuing legislative purpose to avoid the limitation found by the Supreme Court in Eliot v. Freeman, supra, arising out of the language "organized under the laws of the United States or of any state," etc.

Plainly there is nothing, in this history of legislative and judicial dealing with the matter, lending support to plaintiffs' contention that Congress intended to exempt such business organizations as the plaintiffs'. Rather does the history support the natural construction of the acts in question.

We find nothing else in the history of the legislation concerning this and analogous forms of taxes, nor in other cases cited, tending to uphold the plaintiffs' contentions or otherwise calling for analysis and discussion.

A brief description of the three plaintiff organizations will conveniently precede our final considerations. We take first the Hecht Case, agreeing with learned counsel that it is the strongest case for the plaintiff.

On superficial examination, this organization looks somewhat like a family affair, making provision for members of the Hecht family, immature or otherwise unfitted for business responsibilities. But, on analysis, we find the organization is a very genuine business concern.

In 1899, members of the Hecht family, holding as tenants in common real estate on Federal street and Atlantic avenue, Boston, conveyed it to Jacob Hecht, who declared a trust for 12 beneficiaries, all named Hecht, who received certificates, transferable like ordinary corporation shares, but with a restriction in favor of lineal descendants of Elias Hecht, and, on certain contingencies not now important, to be offered to the trustee before sold to an outsider. The restriction is analogous to the close-corporation provision dealt with in New England Trust Co. v. Abbott, 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271. It is in no way peculiar to a trust as distinguished from a corporation. While the Hecht trustee has broad general powers of management, including power to buy and sell, the seat of real power is with the shareholders and not with the trustee; for three-fourths of the shareholders may remove the trustee, three-fifths may terminate the trust or give him binding instructions, and also—what is of vital importance—modify the instrument in any particular. This power to modify covers, potentially, the right to extend or change the business, so as to make it as large and as corporate in form and function as the Crocker concern, which admits that it has evolved into an association. The Hecht organization is not a trust within the doctrine of the Massachusetts decisions. Williams v. Milton, 215 Mass. 1, 102 N. E. 355. Compare Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; In re Associated Trust (D. C.) 222 Fed. 1012. The Hecht trustee has made annual statements showing the assets, liabilities, and net income, and kept books, containing a capital account and surplus account. Its stockholders have, sensibly and we think legally, treated their dividends like corporation dividends, in their income tax returns. They have thus by conduct, presumably under the advice of counsel, denied that they are partners taxable under the act of 1918, § 218(a).

Parenthetically we note that counsel do not contend that the shareholders of any of these plaintiff associations are partners. There is no suggestion that any of the shareholders in any of the plaintiff organizations have made, propose to make, or could make, tax returns as partners in these business concerns. Manifestly counsel would deprecate such result as imposing burdens probably much heavier—certainly difficult, if not impossible, of ascertainment—upon the shareholders in such organizations. Their quest is tax exemption, not tax substitution. Compare Dana v. Treasurer, 227 Mass. 562, 565, 116 N. E. 941; Frost v. Thompson, 219 Mass. 360, 106 N. E. 1009.

Plainly the Hecht Trust is quasi corporate in form and power. It is an association within the meaning of the Revenue Acts.

The Haymarket Trust, both in genesis and organization, is even more like a corporation. It has none of the aspects of a family affair. It started by securing from the investing public $250,000 on solicited subscriptions, the trustee paying a commission of $2,500 to the promoter for thus raising the capital for doing business. The declaration of trust provides for nearly all the machinery and proceedings of an ordinary corporation. We hold it also to be quasi corporate and an association within the meaning of the Revenue Acts.

Learned counsel in the Crocker Case admit that it is an association, but claim exemption on the ground that the concern has no capital stock. This association was evolved from the Wachusett Realty Trust, above referred to. As there pointed out, the shareholders had under the Wachusett declaration no power to amend without the assent of the trustees. But in June, 1917, shareholders and trustees both agreeing, the organization was radically altered. Its name was changed, and in express terms it agreed that its form should thereafter be "changed to that of an association," with power to take over and carry on the extensive manufacturing business previously carried on by the corporation whose stock it had held, or any substantially similar business.

The new organization conforms closely to the corporation model—in powers, in official personnel, and in methods of doing business.. It has issued 96,000 shares of no par value, transferable like corporation stock, but with a restriction somewhat like that in the case of New England Trust Co. v. Abbott, supra.

Conceding that it is an association with transferable shares, this plaintiff yet seeks exemption on the ground that it has attached no par value to its 96,000 shares. It admits that, if it had attached a par value of, say, $100 to each of these shares, making a capital account of $9,-600,000, a little less than is shown on its balance sheet of July 1, 1917, where the interest of the shareholders is put down as $9,877,105.16, the concern would have had a capital stock represented by shares, and thus be an association within the meaning of the Revenue Acts, supra.

We cannot adopt this scholastic and artificial distinction. Cf. Worth Bros. v. Lederer, 251 U. S. 507, 510, 40 Sup. Ct. 282, 64 L. Ed. 377. It is for present purposes immaterial whether the stock of a corporation, of an association, or a joint-stock company has or has not par value. Compare Gen. Laws of Mass. c. 156, §§ 14, 15, 47. Stockholders, whether a definite value is or is not attributed to their shares, severally or in mass, own beneficially the net value of the corporation's assets; that is, whatever may remain after discharging debts. See Hood Rubber Co. v. Commonwealth, 238 Mass. 369, 371, 131 N. E. 201; Cook, "Stock Without Par Value," Am. Bar Ass'n Journal, October, 1921; Hollen and Tuthill, "Stock Having No Par Value," Am. Bar Ass'n Journal, November, 1921, p. 578; Colton, "Par Value v. No Par Value Stock," Am. Bar. Ass'n Journal, December, 1921, p. 671. Compare, also, Eisner v. Macomber, 252 U. S. 189, 209 et seq., 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

Congress intended that this tax should be measured by the average amount of capital used during the tax year in doing the business. The

phrase in the statutes as to "including surplus and undivided profits" puts beyond doubt the question of the congressional intent to measure this tax by business and financial realities, not by bookkeeping forms or mere names. "Fair value" and "fair average value" carry the same notion. Cf. Wright v. Georgia R. R. et al., 216 U. S. 420, 424, 425, 30 Sup. Ct. 242, 54 L. Ed 544.

The Crocker Association cannot escape taxation, falling on its competitors, by adopting the modern theory of no par value for its stock. The presumption is against such immunity; it savors of special privilege. Compare United States v. Dickson, 15 Pet. 141, 165, 10 L. Ed. 689.

It is a matter of common knowledge that, for most business and financial purposes, all the larger organizations of this sort have for years been indistinguishable from corporations. One might almost say that they are a device under which parties make their own corporation code. Business concerns so organized have come to occupy a large field in industry and in finance. At least two substantial text-books have been written on the law concerning such organizations and dealing with their advantages for general business purposes. See Sears, Trust Estates as Business Companies, 1st Ed. 1912, 2d Ed. 1921. Note the long list of industries so organized, referred to on pages VI and VII of the preface of the 1921 edition. See Wrightington on Unincorporated Associations, 1916. In Dana v. Treasurer, 227 Mass. 562, 565, 116 N. E. 941, it appears that the Amoskeag Manufacturing Company, commonly known to be one of the largest enterprises in New England, is so organized. The Pepperell Manufacturing Company, before this court in Malley v. Bowditch, supra, had a capitalization of over $7,-500,000; the Crocker Trust operates large paper manufacturing mills, employing about 1,000 men, with gross assets of over $10,000,000. ·

Such concerns have long been recognized as quasi corporate in form. In 1904, Chief Justice Knowlton, in the Massachusetts Supreme Judicial Court, said of a typical one of them, in Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87:

"The agreement creating the trust has peculiar provisions. The object of it, apparently, was to obtain for the associates most of the advantages belonging to corporations, without the authority of any legislative act, and with freedom from the restrictions and regulations imposed by law upon corporations."

No amplification of words could more accurately and adequately characterize this sort of business organization. Other cases in the Massachusetts reports concerning them abound in similar observations as to their resemblance to corporations. Williams v. Milton, 215 Mass. 1, 102 N. E. 355, and cases cited. See Williams v. Boston, 208 Mass. 497, 94 N. E. 808; Phillips v. Blatchford, 137 Mass. 510, 515; Tyrrell v. Washburn, 6 Allen, 466, 474.

But the proposition that they are quasi corporate in form need not rest merely on our own analysis or on observations found in the decisions of the Massachusetts courts. It has now been distinctly recognized by the Massachusetts Legislature; they have a statutory status as associations, not as trusts or as partnerships.

In the decision below, these organizations have been treated as having no status not arising out of the common law; so also in the briefs of the government and of counsel for the defendant. It seems to have been overlooked that they have acquired in Massachusetts a distinct statutory basis. This, if the question before us were otherwise doubtful, would seem to us of much significance. See Gen. Laws Mass. 1921, c. 182, codifying earlier legislation of 1909, 1913, 1914, 1915, and 1916. Compare, also, St. 1921, c. 368. The title of this chapter is "Voluntary Associations."

In section 1 of this act, dealing with definitions, it is provided:

"'Association,' a voluntary association under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares."

This definition exactly fits the plaintiffs at bar.

In section 2 it is provided that the written instrument or declaration creating the association shall be filed with the commissioner of corporations, and with the clerk of every town where such association has a usual place of business. Section 5 requires the commissioner to transmit to the secretary of state copies of such instruments or of any amendments filed during the previous year, to be printed as a public document. The instruments creating such associations are thus made even more generally accessible than are ordinary corporation charters.

Sections 3 and 4 and 7 to 11 deal specially with associations owning stock of public utility companies; they need no present comment.

Section 6, a re-enactment of St. 1916, c. 184, passed subsequent to all the Massachusetts decisions cited and relied upon by the plaintiffs, has probably the most direct bearing on our present problem; it is as follows:

"An association may be sued in an action at law for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees, or by any duly authorized officer of the association, in performance of their respective duties under such written instruments or declarations of trust, and for any damages to persons or property resulting from the negligence of such trustees, agents or officers acting in the performance of their respective duties, and its property shall be subject to attachment and execution in like manner as if it were a corporation, and service of process upon one of the trustees shall be sufficient."

Here is a distinct enactment that such associations shall be suable in like manner as if corporations. An organization described as an association and made generally liable "to attachment and execution in like manner as if it were a corporation" cannot easily be held a partnership or a trust.

We are not called upon to deal with the confusing and perhaps irreconcilable decisions in the Massachusetts courts concerning the nature and legal incidents of these associations, most of which were made before the passage of this act of 1916, or with the effect of this legislation upon their powers and liabilities, except so far as pertains to our single problem of determining whether these associations are liable to federal taxation under the Revenue Acts, supra. We intimate no opinion on any other question. But when a Massachusetts statute

has described such organizations as associations, and has put their liability to ordinary creditors apparently on the same basis as that of corporations, we have no hesitation in reaching the conclusion that they have now been given a statutory basis as quasi corporate, and that they are associations within the meaning of the federal statutes, as well as under the Massachusetts statutes. We cannot hold Massachusetts associations, liable under Massachusetts statutes to ordinary creditors as though corporations, not liable under federal statutes to taxation imposed generally on corporations, joint-stock companies, and associations.

It may be argued that these statutes are distinguished from corporation acts, in that their chief functions are to regulate or restrict, whereas corporation acts also empower. Technically that may.be so. But the powers of these voluntary associations are in many respects greater, and the regulations and restrictions less, than in the case of corporations. Broadly speaking, their promoters select and define such powers, and provide such limitations of liability, as they desire. Cf. Hussey v. Arnold, supra. If and in so far, therefore, as the tax in question is directed at "the privilege" or power of doing business through large organizations, and particularly at the power to obtain money from the outside public on transferable shares, voluntary association offers at least as much "privilege" as does any corporation form of organization. Associations are resorted to, not because thought weaker, but because thought stronger, than corporations.

If, in construing the statutes, we may look at the policy Congress probably desired to adopt, it could not be overlooked that the plaintiffs' contention, if sustained, would amount to a discriminatory immunity in favor of a kind of business organization, the nature and activities of which have hitherto been the subject of much question and investigation. See the Report of the Tax Commissioner of Massachusetts on Voluntary Associations, under Resolves of 1911, c. 55, a very interesting document, in which Commissioner Trefry ably reviewed their origin, history and legal incidents, both in England and in this country, referring, passim, and particularly on page 13, to many other documents and legislative reports concerning them. See, also, a report of the Special Commission to Investigate Voluntary Associations, January, 1914, made under Mass. Resolves of 1912, c. 113. In the Resolve of 1911, c. 55, the commissioner was required to make an investigation "with a view to" determine inter alia "whether * * * their prohibition * * * is advisable in the public interest."

There is, we think, no conceivable reason why Congress should have desired to favor organizations of this questioned sort by exempting them from taxation to which their competitors in corporate form are subjected. The presumption is plainly the other way. Modern corporation laws furnish adequate machinery for carrying on every legitimate form of business, including now that of dealing in real estate. See Gen. Laws Mass. c. 156, passim; section 7, authorizing real estate corporations. There is no present reason for resorting to this form of organization, except on the theory that more "privileges of doing business" may be thus acquired than by conforming to our broad and elastic

corporation laws. To hold that Congress intended to discriminate in their favor would be to disregard the letter, the spirit, and the reason of the acts.

Our views accord with those expressed by Judge Page in Chicago Title & Trust Co. v. Smietanka (D. C.) 275 Fed. 60. The reasoning of Judge Morton in the Associated Trust Case (D. C.) 222 Fed. 1012, where he reached the conclusion that such an association was an "unincorporated company," within the meaning of the Bankruptcy Act, seems to us to sustain our conclusions rather than those reached by the learned judge in the instant cases.

We may summarize our conclusions as follows:

(1) The natural interpretation of the language used in the acts of 1916 and 1918 would include plaintiffs' organizations as associations.

(2) The contrast between the language used in the act of 1909 "organized *under* the laws of the United States or any state," etc., and in the acts of 1916 and 1918 "organized *in* the United States," shows that Congress intended to avoid the result reached in 1911 by the Supreme Court in Eliot v. Freeman.

(3) The manifest general purpose of Congress was to tax business deriving powers and making profits from association, particularly business done by organizations getting all or a substantial part of their capital on transferable shares, such as are commonly sold to the investing public.

(4) Prior to the passage of either the Revenue Act of 1916 or 1918, the Massachusetts Legislature had by the acts of 1909 and 1914 expressly recognized such organizations as associations. Congress used the word "association" as the Massachusetts Legislature had previously defined and used it.

(5) By the act of 1916, the Massachusetts Legislature made such associations liable to creditors in like manner as if corporations; by analogy they have similar liability to the federal government for taxes.

(6) The case of Malley v. Crocker, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, makes, on analysis of the Wachusett Trust and the reasoning of the court, not for the plaintiffs, but for the government. One ground of that decision was to avoid unjust, discriminatory, double taxation; whereas, to sustain the plaintiffs' contention would create discriminatory immunity for a large class of business organizations, thus giving them an unfair advantage over their incorporated competitors.

(7) The conclusion now reached accords with the reasoning and decision of this court in Malley v. Bowditch, 259 Fed. 809, 170 C. C. A. 609, 7 A. L. R. 608.

In each case the judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error recovers costs in this court.