require the plaintiffs to set forth and declare upon such written contracts?

Counsel for plaintiffs contend their actions are in form ex delicto, and that they are not required by the rules of pleading to rely upon or set forth the contracts, if any exist, between the parties to the action. Counsel for defendant contends, in the absence of a direction from Congress, the practice adopted and followed by the state courts of this state under the Code must control. This latter contention I think correct. The common-law forms of action are, by provision of the Code, expressly abolished. All a plaintiff is required to do in pleading under the Code is to state the facts constituting his cause of action in plain and concise language, without repetition. It is no concern of the pleader, under the Code of this state, whether the facts constituting his cause of action form a cause of action which at the common law would be denominated ex delicto or ex contractu, or both in one; but the settlement of this contention does not, in my judgment, settle the question under consideration. I do not find the Supreme Court of this state to have ruled upon the precise question under consideration here, and no authoritative decision of that court is cited by counsel. The exact question, in my judgment, is, admitting a contract of shipment between the parties, in writing, to exist, and in the possession of plaintiffs, as was admitted at the oral argument, must the plaintiffs plead and prove such contracts, as a part of their case, or is such contract a matter of defense to the carrier? Upon investigation of this subject, I find the precise question to have been passed upon by the Court of Appeals for this circuit in Southern Pacific Company v. Arnett, 111 Fed. 849, 50 C. C. A. 17. In that case, Judge Thayer, in delivering the opinion of the court, says:

"A special contract, when exacted by a carrier, is a defensive weapon to be made use of by the carrier when sued by the shipper for any alleged dereliction of duty against which it was designed to afford protection."

Upon authority of that case, controlling here, the motion will be overruled.

---

### FROST & ADAMS v. SALTONSTALL, Collector.

(Circuit Court, D. Massachusetts. November 12, 1887.)

#### No. 2,892.

1. CUSTOMS DUTIES—PROTEST—TIMELINESS—HOLIDAYS.

Notice was posted in a customhouse that it would be closed June 17th —a holiday observed by local custom, but not established by law. Certain importers, having notice of the closing of the customhouse on that day, which was the tenth day after the liquidation of their entry, filed a protest on the day following. *Held*, that the protest was filed in accordance with the requirements of section 2931, Rev. St., providing that protests shall be made "within ten days after the ascertainment and liquidation of the duties."

At Law.   Action to recover excessive duties.

This action was brought by Frost & Adams, importers, against Leverett Saltonstall, collector of customs at the port of Boston, to recover excessive duties which had been paid under protest. The entry in question was liqui-

129 F.—31

dated June 7, 1887, but the importers did not file their protest with the collector until June 18th. The customhouse, however, was closed on June 17th, in celebration of Bunker Hill day, which, it appeared, was not a holiday established, but a local one observed in Boston and vicinity in accordance with a long-standing custom. The importers contended that, as June 17th was not a legal holiday, the collector had no right to close the customhouse on that day, and that the protest might be filed on the following day, the 18th, and yet satisfy the requirements of section 2931, Rev. St., where it is provided that protests shall be made to the collector in writing "within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs." Note Shefer v. Magone (C. C.) 47 Fed. 872.

On appeal to the Secretary of the Treasury in accordance with said section 2931, it was decided, June 28, 1887, that the protest was not in time; the following language being used in the secretary's letter to the collector:

"It appears from your report that the entry of the merchandise in question was liquidated on the 7th instant, while the protest and appeal were not lodged until the 18th instant, more than ten days after the date of liquidation. The department must therefore decline to entertain the appeal. The claim of the appellants that the protest should be considered as filed in time because the customhouse was closed on the 17th of June, the tenth day after liquidation, cannot be allowed, inasmuch as it has been invariably held by the Department (see T. D. 7,858) that the ten days prescribed by section 2931 of the Revised Statutes include Sundays and holidays; and, besides, it is not understood that any legal authority existed for closing the customhouse on said date."

The importers thereupon brought suit against the collector, setting forth in their declaration that they had filed with the defendant a "due and timely" protest in writing, and the following motion was entered in their behalf:

"And now comes the plaintiff, and makes a motion that the protest per steamship Pavonia, mentioned in the second item of the bill of particulars, as filed June 18, 1887, may be adjudged to have been filed in accordance with the requirements of section 2931 of the Revised Statutes of the United States. * * *"

At the trial of the case the plaintiff's counsel testified that he had called at the customhouse on June 16th, and there found notice posted that it would be closed to business on the day following. It was argued that, if the collector might properly close the customhouse on one day, he might close it for 10 days or more, and thus entirely defeat the importers' rights.

Charles P. Searle, for importers.

T. H. Talbot, Asst. U. S. Atty.

COLT, Circuit Judge. At the close of the argument the court ruled that this notice furnished a good excuse for not filing a protest June 17th, and made a protest filed on the 18th valid.

Motion allowed, and judgment entered for the plaintiff.

---

### PRICE & HART v. T. J. ELLIS & CO.

#### (Circuit Court, E. D. Arkansas, W. D.    April 11, 1904.)

#### No. 5,265.

1. REMOVAL OF CAUSES—AMOUNT IN DISPUTE—COUNTERCLAIM.

Where the defendant in an action by a nonresident in a state court to recover a sum less than $2,000 files a counterclaim by which he seeks to recover a sum greater than $2,000, the cause is removable by the plaintiff at or before the time he is required to plead to such counterclaim.

¶ 1. See Removal of Causes, vol. 42, Cent. Dig. § 131.