## APPEAL OF SOUTHERN CALIFORNIA LOAN ASSOCIATION.

Docket No. 4865.    Submitted April 14, 1926.    Decided June 25, 1926.

1. When a question as to the jurisdiction of the Board is raised, that question must be determined before the Board proceeds further with the proceeding. *Frost Superior Fence Co.*, 1 B. T. A. 1096; *A. H. Stange*, 1 B. T. A. 810.

2. It is not the duty or province of the Board to decide questions of policy in the administration of the office of the Commissioner. *Clois L. Green*, 2 B. T. A. 148.

3. Mailing by the Commissioner of a letter to the taxpayer by registered mail notifying the latter of a deficiency in tax, is a compliance with section 274 (a) of the Revenue Act of 1924.

4. The statutory period within which appeals may be filed runs from the date of mailing deficiency notice and not from the date such notice bears.

5. The Board is a quasi judicial body and Federal judicial decisions, relative to limitation of time for instituting proceedings, are applicable in its procedure and practice.

6. Legislative history of the Board and weight to be given to it by the courts in interpreting Federal statutes reviewed.

7. In computing the time within which appeals may be filed under section 274 of the Revenue Act of 1924, each and every day should be counted and if the sixtieth day falls on Sunday, the time for filing an appeal is not thereby extended to the following day. Following *Sam Satovsky*, 1 B. T. A. 22.

8. Facts which do not appear in the record but which are contained only in petitioner's brief, are not before the Board so as to enable it to base any decision thereon.

*Louis Laval Hamby, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, and *J. Arthur Adams, Esq.*, for the Commissioner.

### Before KORNER.

This proceeding came on for hearing on December 2, 1925, on the motion of the Commissioner to dismiss. The issue raised by the motion is the jurisdiction of the Board to hear and determine the

proceeding. The proceeding involves income and profits taxes for the years 1918, 1919, 1920, and 1921, in the aggregate amount of $9,870.90.

## FINDINGS OF FACT.

On April 15, 1925, the Commissioner notified the petitioner by registered mail of a deficiency, in respect of an income and profits tax, by mailing to it on that day, by registered mail, a letter notifying it of his determination that there was such a deficiency. Thereafter, on June 15, 1925, the petitioner filed an appeal with the Board of Tax Appeals.

## OPINION.

KORNER, *Chairman:* The motion of the Commissioner goes to the jurisdiction of the Board to hear and determine this proceeding. That issue being before it, the Board must determine whether or not its jurisdiction obtains. If it does not, it can not be conferred by the parties either by their affirmative or negative action.

1. The petitioner contends that the Commissioner's motion raises no issue of fact because it is predicated on the fact that the petition contains allegations from which it appears that the petition was not filed within the statutory period prescribed for the filing of appeals.

The petition contains these allegations:

The above-named taxpayer hereby appeals from the determination of the Commissioner of Internal Revenue set forth in his deficiency letters of April 15, and February 28, 1925, copies of which are attached hereto as a part hereof, and as a basis of its appeal states as follows:

\*     \*     \*     \*     \*     \*     \*

II. The deficiency letter was mailed to the taxpayer on or about, and not before April 15, 1925.

It may be stated in passing that the letters referred to were not attached to the petition nor do they appear at all in this record.

To this contention of the petitioner we deem it sufficient to reply that this Board must, from its own inspection of the record, determine whether the subject matter thereof is within its jurisdiction. *Börs* v. *Preston*, 111 U. S. 252, 255. The Board might go even further and hold that, since the Board is a tribunal of limited jurisdiction, the presumption, in every stage of the cause, is that the cause is without its jurisdiction unless the contrary appears from the record. *Grace* v. *American Central Insurance Co.*, 109 U. S. 278, 283. If such a rule were applied in the instant case, the proceeding must of necessity have been dismissed on the face of the petition. There is no allegation therein contained which affirmatively shows jurisdiction in the Board. However, due to the fact that the statutory period within which appeals may be brought runs from the date of mailing of the statutory deficiency notice, and that date is

peculiarly within the knowledge of the Commissioner (although readily available to the petitioner), the Board has deemed it proper to require the Commissioner to submit evidence of the date of mailing of the deficiency notice when a motion is made by him to dismiss on jurisdictional grounds based on the failure of petitioner to file his appeal within the statutory limitation of time. We believe this rule to be a salutary one and one which can not but tend to convenience, expedition, and accuracy of fact.

The record here presents a question of jurisdiction which, however it be raised, we do not feel at liberty to pass without notice. *Grace v. American Central Insurance Co., supra.* The Board has heretofore applied this principle in matters of jurisdiction. *Appeal of Frost Superior Fence Co.,* 1 B. T. A. 1096; *Appeal of A. H. Stange,* 1 B. T. A. 810, 815. When jurisdiction depends upon the existence of a fact its existence is a matter of evidence. The fact that the deficiency notice herein appealed from was mailed by the Commissioner by registered mail on April 15, 1926, was established by proof, the evidence of which was admitted by the Board with the expressed lack of objection on the part of petitioner's counsel.

2. Petitioner's second ground of defense to the Commissioner's motion is that the Commissioner was required by the Revenue Act of 1924 to notify the taxpayer of the date of the mailing of the deficiency letter, and that this he failed to do.

The Revenue Act of 1924 provides:

SEC. 274 (a) If, in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the taxpayer, except as provided in subdivision (d), shall be notified of such deficiency by registered mail * * *. Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals * * *.

(c) If the taxpayer does not file an appeal with the Board within the time prescribed in subdivision (a) of this section, the deficiency of which the taxpayer has been notified shall be assessed, and shall be paid on notice and demand from the collector.

The effect of this position of the petitioner would be to require that, in addition to his mailing the deficiency notice to the taxpayer by registered mail, the Commissioner would be required to notify taxpayer that he had sent the notice and of the date of mailing thereof. In his brief petitioner's counsel has suggested the method for effectuating this in a simple and effective manner. Much might be said in favor of his suggestion. Its adoption by the Commissioner might result in good. However, on that point we do not express an opinion. As we said in *Appeal of Cleveland Home Brewing Co.,* 1 B. T. A. 87, 91: "It is no part of the duty of this Board, nor has it the right, to decide in any manner questions of

policy in the administration of the office of the Commissioner." See also *Appeal of Clois L. Greene*, 2 B. T. A. 148.

The statute has not imposed on the Commissioner the duty which petitioner contends should be his. The statute only requires that the taxpayer shall be notified of a deficiency by registered mail. The Commissioner has adopted the policy of writing a letter of notification and forwarding it to the taxpayer by registered mail. The statute provides that the taxpayer may appeal to the Board *within 60 days after such notice is mailed*. That is all. It then provides that if the taxpayer does not file an appeal within that time, the tax shall be assessed. It does *not* provide that the taxpayer may appeal to the Board within 60 days after such notice is mailed *provided the taxpayer is further notified of the date of the mailing*. It may be argued that such a provision is desirable but, even so, we can not supply that which Congress has omitted to say. We can only construe the statute, not write it. We do not believe that the petitioner's contention in this respect can extend the statutory period within which a taxpayer must appeal.

The Board has never held that the date of the deficiency notice is proof of the date of its mailing or that the statutory period for filing an appeal runs from the date of such letter. The Board does hold that that period begins to run from the date on which that statutory notice is mailed by registered mail. That is the plain statutory provision. *Appeal of Hurst, Anthony & Watkins*, 1 B. T. A. 26.

3. The third contention of the petitioner is that the petition was filed within 60 days after the mailing of the registered deficiency notice. By computation, the sixtieth day following April 15, 1925, was June 14, 1925. The latter day was a Sunday. The petitioner filed on June 15, 1925, and contends that in so doing he filed on the sixtieth day because Sunday is *dies non juridicus*. The issue may be briefly stated: Under section 274 of the Revenue Act of 1924, providing that a taxpayer may file an appeal with the Board within 60 days after the deficiency notice is mailed but that if he does not file an appeal with the Board within the prescribed time of 60 days the tax may be assessed, does the prescription "within 60 days" include Sunday if the sixtieth day falls on Sunday?

The Board has heretofore held in *Appeal of Sam Satovsky*, 1 B. T. A. 22, that all days within the prescribed period of 60 days should be counted and that Sunday should be counted as part thereof. In that appeal the Board adopted the reasoning of the Circuit Court of Appeals, Eighth Circuit, in *Johnson* v. *Meyers*, 54 Fed. 417, which is quoted *in extenso* in our opinion in that appeal.

The petitioner finds fault with *Johnson* v. *Meyers, supra,* and likewise with the Board for following its reasoning. The criticism of the former is that it is not in consonance with certain decisions of the Supreme Court of the United States which were called to our attention, and the latter falls under criticism on the ground that the rules applicable to limitation as to time in respect to instituting actions or appeals are not applicable to the Board. Let us analyze these criticisms.

In *Johnson* v. *Meyers, supra,* the court was construing a limitation as to time within which an appeal might be taken, under a *Federal statute.* This should not be lost sight of. The petitioner claims that *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47; 37 L. Ed. 72, should govern. The opening words of the opinion in that case are (p. 52):

This case involves the construction of the statutes of Texas with regard to the purchase of school lands, and depends upon the question whether, during the ninety days allowed to the proposed purchaser to make his first payment, it is competent for the surveyor to receive another application for the same land * * *.

That case involved no Federal question or any Federal statute. A perusal of the facts therein convinces us that it has no bearing whatsoever on the point we are here considering. It is true that in the opinion the court said: " As the ninetieth day fell on Sunday, the lands were not open to another application until Monday, the general rule being that, when an act is to be performed within a certain number of days, and the last day falls on Sunday, the person charged with the performance of the act has the following day to comply with his obligation." But language must be read in connection with the subject matter under discussion. When the court uses the language just quoted in discussing a law of Texas relative to applications to buy school lands, we do not feel that such language is binding authority when the question under consideration is the limitation on the time for bringing an action under a Federal statute. It is quite conceivable, and to our minds probable, that, if the court had been discussing the latter issue, it might have held the contrary. We do not think the *Monroe Cattle* case is authority for petitioner's position.

The case of *Street* v. *United States,* 133 U. S. 299, is urged by petitioner as favorably decisive of its contention. In our opinion that case is scarcely more in point than the one just referred to above. Indeed, it is of such doubtful support as to give reasonable grounds to the conclusion that it supports the opposite view. In 1870 Congress had enacted a statute looking to the reduction of the Army. Section 12 provided that if any supernumerary officers

should remain after the first day of January, 1871, they should be honorably mustered out of service. January 1, 1871, fell on Sunday. By order dated January 2, 1871, Street was transferred to the list of supernumeraries by the Secretary of War. The plaintiff contended that, since the order of January 2, 1871, was after the first day of January, 1871, the order was illegal and of no force and effect. The court stated the case, in its opinion, as follows:

That order [of January 2, 1871] is, therefore, the matter of inquiry.

In 1869 and 1870 acts of Congress were passed looking to a reduction in the army, and the order in question was made in pursuance to the last of these acts. The intent of Congress is obvious, and all proceedings had to carry such intent into effect should be liberally construed, and not subjected to any such technical limitations as will thwart such obvious purpose. [Pp. 299–300.]

\*          \*          \*          \*          \*          \*          \*

While it is conceded that the President might add to or take from the list of supernumerary officers, it is urged that he could muster out only those who were supernumerary officers at the close of the first day of January, 1879 [*sic*], the language being: "And if any supernumerary officers shall remain after the first day of January next they shall be honorably mustered out," etc., whereas, by the order actually made, he was transferred to the *supernumerary list only on the second day of January. Concede the irregularity,* and it is not such as vitiates the order. The *purpose* of the act is obvious. The direction of Congress was clear and distinct, and it would be strange if any executive officer could, by irregularity in executing the mandate of Congress, thwart this purpose. *The matter of time was not vital.* The purpose was reduction, \* \* \* and while Congress prescribed the time within which this mandate was to be executed, *there is neither in terms nor by implication any subordination of the power to the matter of time.*

Again, it must be noticed that the first day of January was Sunday, that is, a *dies non*, and a power that may be exercised up to and including a given day of the month may *generally*, when that day happens to be Sunday, be exercised on the succeeding day. So that it is a matter *worthy at least of consideration* whether the power was not exercised within the very limits of the time prescribed by the act. [Pp. 305–306.]

\*          \*          \*          \*          \*          \*          \*

All these matters justified the action of the President taken on the 2d of January, and *if they do not* establish that it was in full and literal compliance with the exact provisions of section 12, they certainly leave so slight a departure as scarcely to be worthy of mention. [P. 307.]   (Italics ours.)

Finally, the court held (p. 307) that the action of the Secretary of War, *whether irregular or not*, had been validated by subsequent legislation, and the court concludes:

There has been thus full legislative recognition of its validity. It is too late, therefore, now to enquire as to whether it was in technical compliance with the procedure prescribed by the act of 1870.   (Italics ours.)

From the foregoing, it must clearly appear that *Street's* case is not determinative of the present issue favorable to petitioner's contention, if indeed there is not strong indication therein to the contrary.

The petitioner has called our attention to a line of cases arising in state jurisdictions which, it contends, support its position. We do not review these cases here for the reason that we recognize that in such jurisdictions there are numerous decisions favorable to petitioner's position, arising under the peculiar statutes, or under the precedents followed, in such jurisdictions. Here we are concerned with a Federal statute and the construction of state courts given to their own laws can not control or modify Federal decisions to the contrary.

*Danville* v. *Brown*, 128 U. S. 503, is not authority for the petitioner's position, for, in the statute there under consideration, there was an express exclusion of Sundays in the computation of time.

But the petitioner contends that the line of Federal decisions, among which is *Johnson* v. *Meyers*, *supra*, followed by this Board in *Satovsky's* case, relate to judicial procedure only and do not have any bearing on or relation to the interpretation of administrative law, and that the statutory limitation as to time within which an appeal may be instituted before this Board is purely administrative and not judicial. The petitioner contends that this Board is purely an *administrative* branch of the executive department and does not partake, nor have the aspects, of a judicial tribunal, and that the Federal decisions with respect to limitations as to time within which appeals may be brought can not have application. Let us examine into this.

The Board was created by the Revenue Act of 1924. But its form as it came into being was essentially different from that first contemplated. Among the amendments to the Revenue Act of 1921 proposed by the Secretary of the Treasury in his letter to the Chairman of the Committee on Ways and Means, on November 10, 1923, was one to " establish a Board of Tax Appeals *in the Treasury*, but independent of the Bureau of Internal Revenue, to hear and determine cases involving the assessment of Internal Revenue Taxes.'' It was stated that " this will give an independent *administrative* tribunal equipped to hear both sides of the controversy * * *.'' Accordingly, the Treasury draft of the Revenue Act of 1924 provided for a Board of Tax Appeals in the Department of the Treasury, before which the proceedings were to be *informal* and in accordance with such rules as the Board, with the approval of the Secretary of the Treasury, might prescribe.

There were objections presented to this plan in the hearings before the Committee on Ways and Means, and that committee thereafter approved and reported out a draft of the Revenue Act of 1924 in which the appointment of the members of the Board was placed in the President. Under this draft, the adoption of rules

and procedure in the Board was placed in the Board, and the approval thereof by the Secretary was no longer required. The provision that the proceedings were to be informal was retained. In this form the bill was adopted by the House.

The Senate Finance Committee, after hearings, made substantial changes in the bill as reported to it from the House. It extended the powers of the Board in many respects, among which was the authority for ordering the taking of depositions and the answer, under oath, of any question of fact submitted. Provisions were made for the payment of witness fees similar to those allowed in the case of witnesses before the Federal courts. It was provided for the first time that the Board should be an independent agency in the executive branch of the Government.

A number of important amendments were made in the bill as it passed the Senate. One was that the hearings before the Board should be open to the public. Another important amendment was the elimination of the provision that the proceedings of the Board should be informal and the substitution of the provision that the proceedings should be conducted in accordance with such rules of evidence and procedure as the Board might prescribe. The Senate bill added the provision that the testimony at the hearing should be reduced to writing. It likewise included the following new provision:

It shall be the duty of the Board and of each division to make a report in writing of its findings of fact and its opinion and decision in each case, and a copy of its report shall be entered of record and a copy furnished the taxpayer. Such report and all evidence received by the Board and its divisions shall be public records open to the inspection of the public. The Board shall provide for the publication of its reports at the Government Printing Office in such form and manner as may be best adapted for public information and use, and such authorized publication shall be competent evidence of the reports of the Board therein contained in all courts of the United States and of the several States without any further proof of authentication thereof.

The Conference Committee of the two Houses of Congress likewise made important changes further tending to formality of procedure and the practice of a court. It provided:

(h) Notice and an opportunity to be heard shall be given to the taxpayer and the Commissioner and a decision shall be made as quickly as practicable. Hearings before the Board and its divisions shall be open to the public. The proceedings of the Board and its divisions shall be conducted in accordance with such rules of evidence and procedure as the Board may prescribe. It shall be the duty of the Board and of each division to make a report in writing of its findings of fact and decision in each case, and a copy of its report shall be entered of record and a copy furnished the taxpayer. If the amount of tax in controversy is more than $10,000 the oral testimony taken at the hearing shall be reduced to writing and the report shall contain an opinion in writing in

addition to the findings of fact and decision. All reports of the Board and its divisions and all evidence received by the Board and its divisions (including, in cases where the oral testimony is reduced to writing, the transcript thereof) shall be public records open to the inspection of the public. The Board shall provide for the publication of its reports at the Government Printing Office in such form and manner as may be best adapted for public information and use, and such authorized publication shall be competent evidence of the reports of the Board therein contained in all courts of the United Sates and of the several States without any further proof or authentication thereof. Such reports shall be subject to sale in the same manner and upon the same terms as other public documents. The principal office of the Board shall be in the District of Columbia, but the Board or any of its divisions may sit at any place within the United States. The times and places of the meetings of the Board, and of its divisions, shall be prescribed by the chairman with a view to securing reasonable opportunity to taxpayers to appear before the Board or any of its divisions, with as little inconvenience and expense to taxpayers as is practicable.

The Conference Committee also agreed to a provision for the assessment and collection, upon notice and demand, of all amounts determined as deficiencies by the Board.

The Act, as finally approved by the President on June 2, 1924, contained in sections 900, 274, 279, 280, 308, 312, 316 and 324, the provisions for the creation, authority and jurisdiction of the Board.

In its report to the House the Committee on Ways and Means said:

Under the provisions of the proposed bill creating a Board of Tax Appeals the taxpayer may, prior to the payment of the additional assessment of income, war-profits, excess-profits, or estate taxes, appeal to the Board of Tax Appeals and secure an impartial and disinterested determination of the issues involved. In the consideration of the appeal both the Government and the taxpayer will appear before the Board to present their cases, with the result that each member of the Board will sit solely as judge and not as both judge and advocate. (House Report No. 179, 68th Cong., 1st Sess., p. 8.)

The Senate Finance Committee reported to the Senate as follows:

The House bill provides for the establishment of a Board of Tax Appeals, members to be appointed by the President, with the advice and consent of the Senate. The Board is to act independently not only of the Bureau of Internal Revenue, but of the Treasury Department. * * * The contentions of both the taxpayer and the Bureau of Internal Revenue will be heard and considered and the decision of the Board will be conclusive on both parties on the question of assessment. (Senate Report No. 398, 68th Cong., 1st Sess., p. 42.)

With the announcement of his having signed the Revenue Act of 1924, President Coolidge issued a statement in which he referred to the Board of Tax Appeals. The President said *inter alia:*

The provisions of the bill, however, with reference to the Board, make it in all its essentials practically a court of record. The Board is to be bound by formal rules of evidence and procedure.[1]

---

[1] For a more detailed statement of the legislative history of the Board see Holmes & Brewster's "Procedure and Practice before the United States Board of Tax Appeals," and "Practice and Evidence—United States Board of Tax Appeals," by C. D. Hamel.

Upon its organization the Board, pursuant to authority contained in the Revenue Act of 1924, adopted rules of practice and procedure. These rules were essentially the same as those obtaining in Federal courts of equity. The Board has so functioned since its organization. (Hearings before the Committee on Ways and Means, October 19 to November 3, 1925, pp. 851–945.)[1]

The Revenue Act of 1926 continues the Board. The provisions relative to its procedure and practice are not materially changed, except that its rules of evidence must be in accordance with the rules of evidence applicable in courts of equity of the District of Columbia. (Section 907 (a) of the Revenue Act of 1924, as amended by section 1000 of the Revenue Act of 1926.)

After exhaustive hearings on the proposed Revenue Act of 1926, the Committee on Ways and Means made an extensive report to the House on the subject of the Board. Among other things it said:

> In the view of the committee the decisions of the Board are judicial and not legislative or administrative determinations. (House Report No. 1, 69th Cong., 1st Sess., p. 20.)

The identical language just quoted was used by the Finance Committee of the Senate in its report to that body in respect of the same Act. (Senate Report No. 52, 69th Cong., 1st Sess., p. 37.)

The Congressional Record is replete with utterances of members of Congress as to the status of the Board. Space does not permit nor is it necessary to review them at length. A few instances may be cited as examples:

> Mr. GREEN of Iowa. * * * And there again let me say that there is no other court in the world that considers cases which in the aggregate are of the magnitude of the cases that go before that Board. (Cong. Rec. Dec. 8, 1925, p. 132.)

> Mr. GARRETT of Tennessee. * * * I recognize the quasi judicial character of this tax board. (Cong. Rec. Dec. 12, 1925, p. 316.)

> Mr. CHINDBLOM. * * * Both the taxpayer and the Commissioner of Internal Revenue must seek their remedies, first in the Board of Tax Appeals and then in the Circuit Court of Appeals and finally, in proper cases, upon writ of certiorari to the Supreme Court of the United States. (Cong. Rec. Dec. 12, 1925, p. 323.)

> Mr. BEEDY. If the gentleman will examine the decisions of the Board, he will perceive they assumed the form of court decisions. I may add that these decisions are now being cited in some of our highest courts as authority. * * * (Cong. Rec. Dec. 18, 1925, p. 711.)

> Mr. SUMMERS of Texas. We are creating judicial offices by this bill. They are not technically judicial offices, perhaps, but in fact they are * * *. (Cong. Rec. Dec. 18, 1925, p. 712.)

> Mr. NORRIS. I want to get the Senator's idea about some questions that have arisen in my mind regarding the Board of Tax Appeals. I believe that it is

---

[1] The practice and procedure before the Board is exhaustively treated in the works of Holmes & Brewster, and C. D. Hamel, above referred to. See also "Procedure and Practice before United States Board of Tax Appeals," by KixMiller & Baar.

more or less, and ought to be more or less, of a judicial nature. They will pass purely and solely on questions of law. Am I right in that statement?

Mr. KING. Questions of fact necessarily are involved.

Mr. NORRIS. Oh, yes; I ought to modify my statement to that extent.

Mr. KING. They are in a sense nisi prius courts.

Mr. NORRIS. But it is their duty to say what the law is on the facts as they find them?

Mr. KING. Yes. *  *  *

Mr. NORRIS. They are just the same as any other court in that respect?

Mr. KING. Yes. *  *  *

Mr. NORRIS. It seems to me we are considering this tribunal as having rather a judicial aspect, and that, I think, is the way it ought to be considered. *  *  *

Mr. NORRIS. One of the things I think that everybody must concede as necessary if we are to obtain good results is that the decisions coming from this court shall not be conflicting; they must be uniform, of course. (Cong. Rec. Feb. 11, 1926, p. 3467.)

Mr. SHORTRIDGE. I am merely inviting the Senator's attention and that of other Senators to the proposition that we want a speedy and correct determination of these cases, and this so-called Board of Tax Appeals is, in point of its functions, a judicial tribunal; *  *  *. The bill vests in the Board the functions of a trial court. It is to hear and determine facts as well as to resolve the law applicable to those facts. It is not merely a tribunal to listen to arguments touching matters of law. They receive evidence, they listen to witnesses, they receive evidence oral and documentary, as a jury does. (Cong. Rec. Feb. 11, 1926, p. 3469.)

Mr. REED of Pennsylvania. The procedure outlined in the bill as reported from the committee treats the Board of Tax Appeals practically as a court of original jurisdiction. An appeal from the Board to the Circuit Court of Appeals is in all respects similar to an appeal from a district court to the Circuit Court of Appeals. The case is reviewed on the record and the appellate court has the power to reverse, with or without a venire de novo, or to affirm, but it does not try the case de novo. It does not take testimony. The practice is appellate practice entirely. (Cong. Rec. Feb. 11, 1926, p. 3472.)

We are not unmindful of the varying weight given by the courts to the different phases of legislative history in construing Federal statutes, but it seems to be well settled that while such legislative history can not be used to add to or take from the body of the statute, it may help in interpreting its meaning. *Church of the Holy Trinity* v. *United States*, 143 U. S. 457, 464; *United States* v. *Union Pacific R. R. Co.*, 91 U. S. 72, 79; *United States* v. *Fisher*, 2 Cranch, 358, 386; *Binns* v. *United States*, 194 U. S. 486, 495; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 162; *United States* v. *Pfitsch*, 256 U. S. 547, 550–551; *Standard Oil Co.* v. *United States*, 221 U. S. 1, 50, 66; *New York & Cuba Mail S. S. Co.* v. *United States*, 297 Fed. 158, 162 (C. C. A., 2d Circuit, 1924); *United States ex rel. Patton* v. *Tod*, 297 Fed. 385, 393–394 (*Ibid*, 1924); *Acklin* v. *People's Sav. Ass'n.*, 293 Fed. 392, 397 (D. C. 1923). (See generally "The Value of Legislative History of Federal Statutes," University of Pennsylvania Law Review, January, 1925, pp. 157–169).

We believe that the committee hearings, the committee reports, the statement of the President, and the congressional debates indicate unmistakably the status of the Board of Tax Appeals, and this would appear to be equally clear from the statute itself.

The Revenue Act of 1926 provides for a review of the Board's decisions by the Circuit Courts of Appeals and the Court of Appeals of the District of Columbia under such rules as the courts may adopt and, "until the adoption of such rules, the rules of such courts relating to appellate proceedings upon a writ of error, so far as applicable, shall govern." (Sec. 1001 (b), Revenue Act of 1926.)

In 1924 one Goldsmith applied for admission to practice before the Board. His application was denied for cause by the Board. He brought suit in the Supreme Court of the District of Columbia for writ of mandamus to compel the Board to enroll him. From a judgment dismissing his petition he appealed to the Court of Appeals of the District of Columbia. The appellate court, in *Goldsmith* v. *United States Board of Tax Appeals*, 4 Fed. (2d) 422, in affirming the court below, reviewed the authority and functions of the Board and said:

Consideration of this act [Revenue Act of 1924] as a whole convinces us that it was intended by Congress to confer upon the Board quasi judicial powers, and that hearings before it were intended to be and are of a quasi judicial character.

Goldsmith brought his case to the Supreme Court of the United States on error under section 250 of the Judicial Code. That court, in *Goldsmith* v. *United States Board of Tax Appeals*, 270 U. S. 117, likewise reviewed the duties and powers of the Board and, speaking through Mr. Chief Justice Taft, said:

We think that the character of the work to be done by the Board, the quasi judicial nature of its duties, the magnitude of the interests to be affected by its decisions, all require that those who represent the taxpayers in the hearings should be persons whose qualities as lawyers or accountants will secure proper service to their clients and to help the Board in the discharge of its important duties. * * *

Our conclusion in this case is sustained by the decision of the Supreme Judicial Court of Massachusetts in *Manning* v. *French*, 149 Mass. 391. * * * The fact that in the *Manning* case the body was called a court and that here the Board was an executive tribunal does not make the decision inapplicable. The Court of Alabama Claims was certainly not a United States court under the third Article of the Constitution. It was rather a commission to aid the fulfilment of an international award with judicial powers.

In the light of the foregoing, we feel justified in holding that the petitioner's contention that the rules applicable to court process and procedure have no application in the case of this Board because the latter is purely an administrative body and without the characteristics or attributes of a judicial body, is without merit. The peti-

tioner predicates his argument on this assumption, since he admits that the rule announced in *Johnson* v. *Meyers, supra,* and followed in *Satovsky's* case by the Board, is a correct interpretation of a statute relating to judicial process as distinguished from a purely administrative provision. As indicated above, we believe the petitioner has founded its position on a false premise and that, accordingly, his conclusion is erroneous.

If we assume, then, that the general rules relating to judicial process are applicable, it remains only to ascertain what that rule is. We have had two cases of the United States Supreme Court called to our attention by petitioner, and we have heretofore pointed out that they do not sustain its contention because they have reference to a subject matter entirely foreign to this issue. Indeed, those cases were considered by us at the time *Satovsky's* case was written, but they appeared to us to be so far beside the mark that mention of them was not necessary.

The only other Supreme Court case called to our attention by petitioner is *Meikleham* v. *Grafton,* 246 U. S. 665, wherein writ of certiorari was denied. The writ was sought for a review of the judgment of the Circuit Court of Appeals, Fifth Circuit, in the same case styled *Grafton* v. *Meikleham,* 246 Fed. 737. Reference to the latter case discloses the following language of the court:

The appeal was allowed October 2, 1916, from a judgment entered September 21, 1916. It was therefore allowed on the eleventh day, and would have been too late but for the fact that the day preceding October 2, 1916, was Sunday. Section 31 of the act of 1898 [the Bankruptcy Act] is as follows:

" Whenever time is enumerated by days in this act, or in any proceeding in bankruptcy, the number of days shall be computed by excluding the first and including the last, unless the last fall on a Sunday or holiday, in which event, the day last included shall be the next day thereafter which is not a Sunday or legal holiday. Comp. St. 1916, §9615."

The appeal was taken in time.

The inapplicability of the foregoing is so patent that comment is unnecessary.

The case of *Frost & Adams* v. *Saltonstall,* 129 Fed. 481, was urged in argument by petitioner. In his brief the petitioner states, " This [the law under consideration in that case] was purely an administrative law " and in this we concur. As we have heretofore shown, the rules appertaining to such laws are not in issue here.

There is left for discussion only those cases which, in our opinion, are controlling of the issue before us. In *Frackelton* v. *United States,* 57 Ct. Cls. 587, the Court of Claims denied an application for appeal from a judgment of that court rendered on May 5, 1919, because the application was filed on August 4, 1919, the ninety-first day thereafter. The statute provided that appeals shall be taken

within ninety days after the judgment is rendered. The ninetieth day fell on Sunday. The application was denied on authority of *Siegelschiffer* v. *Penn Mutual Life Ins. Co.*, 248 Fed. 226; *Meyer* v. *Hot Springs Imp. Co.*, 169 Fed. 628; and *Johnson* v. *Meyers, supra.* The court quoted with approval from the opinion in the *Hot Springs* case, *supra*, referred to hereinafter.

In *Siegelschiffer's* case, *supra*, the Circuit Court of Appeals, Second Circuit, discussed this subject at length and finds that when the last day falls on Sunday it is the general rule, made so by statute in many jurisdictions, that the act may be lawfully done on the next · day. (Citing *Monroe Cattle Co., supra.*) The court further states that the law is not uniform as to the conditions under which this rule may apply and enumerates instances in which it may apply. The court then says:

The rule has, however, been held not to apply in computing the time limited by statute for the commencement of an action * * *.

The court then proceeds:

The theory is that, when the period within which an act is to be done is less than seven days, there is reason to think that juridical days are intended, and that Sunday following [sic] within such time should be excluded, but that, where the time limited is such that one or more Sundays must fall within it, the court should not extend the time fixed by excluding the last, the first, or any intermediate Sunday.

The Circuit Court of Appeals, Ninth Circuit, in *Meyer* v. *Hot Springs Imp. Co.*, 169 Fed. 628, said:

But while courts may construe their own rules equitably and extend the time therein limited, they have no such power as to statutes, and the decided weight of authority is that when the act is to be done within a time fixed by statute, and the last day thereof falls upon Sunday, that day will not be excluded, unless a different rule for computing the time is also provided by statute. (Citing numerous Federal authorities among which is *Johnson* v. *Meyers, supra.*)

The precise question now before us was presented to the Supreme Court of the District of Columbia in *Belmont Smokeless Coal Co.* v. *United States Board of Tax Appeals.* (Not officially reported to date but unofficially reported in Prentice-Hall Federal Tax Service 1926, Vol. I, p. 1202.) That court, in a memorandum decision by Hoehling, J. said:

This is a suit in mandamus to require the respondent to entertain an appeal from a deficiency assessment made by the Commissioner of Internal Revenue, April 22, 1925, when notice thereof was mailed plaintiff.

Section 274 of the Revenue Act of 1924 (approved June 2, 1924), provides: " * * * Within 60 days after such notice is mailed, the taxpayer may file an appeal with the Board of Tax Appeals established by Section 900."

It is conceded that plaintiff prepared its appeal, verified it on June 19, 1925, and, on Saturday, June 20, 1925, mailed it, properly addressed, to respondent, and the latter received and filed it, Monday, June 22, 1925, being

the sixty-first day from the day of the mailing of the notice of the deficiency assessment, *supra*—the sixtieth day being Sunday.

The short question here is whether, the sixtieth day, when it falls on Sunday, as it here did, may be extended to the next day; the statute itself being silent concerning such situation. The plaintiff contends that it should be so extended; the respondent denies that it may be, and, so, concluding, respondent dismissed plaintiff's appeal. If the plaintiff's contention be legally sound, the writ of mandamus should issue; otherwise not.

The question thus presented is both interesting and important; but, in the opinion of the court, it is ruled against plaintiff by the decision of the Court of Appeals of this District, in the case of *Covey* v. *Williamson* (52 App. D. C. 289;) thereafter approved in *Huntt* v. *Brightwood Sanitarium Co.*, (53 *id.* 66).

Accordingly, it results that the petition herein should be dismissed, and judgment entered herein for the defendant with costs.

There is yet another feature in the legislative history of section 274 of the respective Revenue Acts of 1924 and 1926, the significance of which should not be overlooked. Section 274 of the Revenue Act of 1924 merely provided that " within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900," and " if the taxpayer does not file an appeal with the Board within the time prescribed in subdivision (a) of this section," the deficiency shall be assessed and paid.

The Board construed that section in October, 1924, in *Appeal of Sam Satovsky*, *supra*, and has consistently followed that rule since that time. The decision of the Supreme Court of the District of Columbia in *Belmont Smokeless Coal Co.* case, *supra*, was rendered December 22, 1925. The revenue bill which became the Revenue Act of 1926 was taken up for consideration by the Committee on Ways and Means on October 19, 1925, and on December 7, 1925, the bill was introduced in the House and committed to the Committee of the Whole House on the State of the Union. The bill as it passed the House contained no essential change in section 274 from the Revenue Act of 1924, in so far as relates to the matter here under consideration.

In the Senate the Act was referred to the Committee on Finance and reported by that committee to the Senate on January 20, 1926. The Act as so reported contained the following amendment to the House bill:

SEC. 274. (a) * * * Within 60 days after such notice is mailed (excluding Sundays and legal holidays of the District of Columbia), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency.

With that amendment the Act passed the Senate and went to the Conference Committee. It will be noted that this amendment provided for exclusion of all Sundays, as well as legal holidays of the District of Columbia, thereby excluding intermediate Sundays from the computation.

The Conference Committee reported the Act with a further amendment in which the words (contained in the Act as it passed the Senate) "excluding Sundays and legal holidays of the District of Columbia" were omitted and in lieu thereof there was inserted "not counting Sunday as the sixtieth day." The result of this amendment as agreed to in conference was to cause the Act to read as follows:

Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency.

In this form the amendment was enacted and became a part of the Revenue Act of 1926.

In commenting on the agreed amendment the Conference Report says:

The House bill authorized the taxpayer to file a petition with the Board of Tax Appeals within 60 days after the deficiency letter was mailed. The Senate amendment excludes from the computation of the 60-day period Sundays and legal holidays in the District of Columbia. Under the action of the conference committee, Sundays and holidays are to be counted like any other days, but if the sixtieth day falls on Sunday, the petition may be filed on the sixty-first day. (House Report No. 356, 69th Cong., 1st sess., p. 39.)

Two observations are to be made with reference to this amendment. (1) The Senate excluded all Sundays from the computation of the 60-day period allowed by the House bill for filing petitions, but agreed in conference to exclude only the last Sunday if that were the sixtieth day. The House bill carried the same provision in this respect as the Revenue Act of 1924. If, under the Revenue Act of 1924, the sixtieth day when a Sunday was properly to be excluded, then the amendment agreed to by the Senate and the House was a vain and innocuous thing. Vain enactments are not to be imputed to the Congress. (2) The Senate excluded legal holidays from the computation but agreed in conference to abandon this exclusion. As the law now stands the sixtieth day, if falling on a holiday, must be included in the computation, but if on a Sunday, it is excluded and this is by virtue of the amendment. Suppose the Senate had receded in conference from its amendment in its entirety, could there be a doubt but that Sundays and holidays would then be on the same footing? Common reason says no. If the Senate had so receded, the law would have been just as it was in the Revenue Act of 1924—neither Sundays nor holidays properly to be excluded.

In *Shwab* v. *Doyle*, 258 U. S. 529, Mr. Justice McKenna, speaking for the court, at pages 534–535, said:

The initial admonition is that laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared. * * *

There is certainly in it no declaration of retroactivity, " clear, strong and imperative," which is the condition expressed in *United States* v. *Heth*, 3 Cranch, 398, 413; also *United States* v. *Burr*, 159 U. S. 78, 82–83.

In *Malley* v. *Howard*, 281 Fed. 363, the Circuit Court of Appeals, First Circuit, said:

The history of the legislation lends emphasis to the initial impression of its import. For it is elementary that, when language used in an earlier statute has in application received judicial construction, change in language in later analogous legislation imports legislative purpose to attain a different result. * * * (pp. 365–366.)

See also *United States* v. *Field*, 255 U. S. 257, 264–265.

We believe that our decision in *Satovsky's* case was the correct one and we adhere to our opinion therein.

4. Petitioner's last ground of defense to the Commissioner's motion is founded on a state of facts which do not appear in the record. It was raised for the first time in petitioner's brief. There are no facts before us upon which we can express an opinion relative to this contention.

The appeal should be dismissed for lack of jurisdiction in the Board to hear and determine it.

> *Order of dismissal will be entered accordingly.*