Donald E. Ziegler and Claudia J. Ziegler, ·Petitioners
v. Commissioner of Internal Revenue, Respondent

Docket No. 10614–75.    Filed May 2, 1978.

*William C. McClure* and *Robert G. MacAlister,* for the petitioners.

*David W. Otto* and *Michael A. Yost, Jr.,* for the respondent.

OPINION

Simpson, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income taxes of $1,050 for 1971, $959.88 for 1972, and $1,017.73 for 1973. The only issue for decision is whether, under section 401(d)(5)(C) of the Internal Revenue Code of 1954,[1] an owner-employee who receives a premature distribution from a qualified retirement plan is prohibited from participating as an owner-employee in any qualified retirement plan for a period of 5 years.

All of the facts have been stipulated, and those facts are so found.

The petitioners, Donald E. Ziegler and Claudia J. Ziegler, husband and wife, resided at Pittsburgh, Pa., at the time they timely filed their petition in this case. They filed their joint Federal income tax returns for 1971, 1972, and 1973 with the Internal Revenue Service Center, Philadelphia, Pa. Mr. Ziegler will sometimes be referred to as the petitioner.

The petitioner is licensed to practice law in the Commonwealth of Pennsylvania. From the fall of 1962 through December 31, 1968, he practiced law as a sole practitioner in the Pittsburgh, Pa., area. On December 27, 1966, he established a

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

retirement plan (the first plan) covering himself by executing a joinder to a master plan maintained by Pittsburgh National Bank, which acted as custodian under such plan. Thereafter, he made contributions to such plan in various amounts in 1966, 1967, and 1968. By January 1, 1969, he had contributed a total of $2,400 to such plan.

Effective January 1, 1969, the petitioner ceased practicing law alone and joined a law partnership known as Catalano, Ziegler, and Maloney (the partnership). On January 24, 1969, he requested and received from Pittsburgh National Bank a distribution of $2,886.24, which represented the entire value of his interest in the first plan. By requesting and receiving such distribution, the petitioner intended to terminate the first plan in anticipation that the partnership would create its own retirement plan to which he could forward the proceeds from the first plan. Nevertheless, such proceeds were deposited and commingled with his other funds. As of the date of such distribution, the petitioner was not disabled within the meaning of section 72 and had not yet reached 59½ years of age. Accordingly, the distribution from the first plan was a premature distribution described in section 72(m)(5)(A)(i), and the petitioner agreed to and paid the penalty prescribed by section 72(m)(5)(B) for such distributions.

From January 24, 1969, to December 1969, the petitioner did not participate in any qualified retirement plan. In December 1969, the partnership signed a joinder to the master plan maintained by Pittsburgh National Bank and thereby established a retirement plan (the second plan), which was separate and distinct from the first plan. Thereafter, the partnership made yearly contributions of $2,500 to such plan on behalf of the petitioner in 1969, 1970, 1971, 1972, and 1973. The 1969 contribution was made in December 1969.

Solely for purposes of this case, the parties agreed that the first plan and the second plan met the requirements of and qualified under section 401 and that Pittsburgh National Bank was a bank which qualified as a custodian within the meaning of section 401. In addition, it was agreed that with respect to both plans, the petitioner was an owner-employee within the meaning of sections 72 and 401 through 404.

On their joint Federal income tax returns for 1971, 1972, and 1973, the petitioners deducted each year the $2,500 contribution

to the second plan. In his notice of deficiency, the Commissioner disallowed such deductions under sections 401 and 404.

The issue for decision is whether an owner-employee, within the meaning of section 401(c), who received a premature distribution from a qualified retirement plan is thereafter ineligible to participate in another qualified retirement plan for a 5-year period under section 401(d)(5)(C). There is a question of whether such provision prohibits participation in any type of qualified retirement plan or whether it applies only to participation as an owner-employee. The petitioner in the case before us seeks to participate as an owner-employee, and consequently, we shall confine our decision as to whether he can participate as such.

The Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. 87-792, 76 Stat. 809, was designed to encourage self-employed persons (such as lawyers practicing alone or in partnerships) to provide for their own retirement. Under such statute, a self-employed individual can establish a qualified retirement plan, can make contributions to such plan for his own benefit within specified limits, and can receive tax benefits analogous to those already available to employers and employees under qualified corporate retirement plans. H. Rept. 378, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 261; S. Rept. 992, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 303.[2] However, the statute provided that for a plan covering a self-employed individual to qualify, it had to meet certain additional requirements not applicable to corporate plans.

Some of the additional requirements were designed to assure that the funds set aside under the plan would, in fact, be used for the retirement of the self-employed individual and that such funds would not be withdrawn prematurely. H. Rept. 378 at 273; S. Rept. 992 at 324-325. Section 401(d)(4)(B)[3] provides that the plan must prohibit distribution of benefits to an owner-employee

---

[2] All references to H. Rept. 378 and S. Rept. 992 are to the pages in the Cumulative Bulletin where such reports are published.

[3] (d) ADDITIONAL REQUIREMENTS FOR QUALIFICATION OF TRUSTS AND PLANS BENEFITING OWNER-EMPLOYEES.— * * *

\* \* \* \* \* \* \*

(4) Under the plan—

\* \* \* \* \* \* \*

(B) no benefits may be paid to any owner-employee, except in the case of his becoming disabled (within the meaning of section 72(m)(7)), prior to his attaining the age of 59½ years.

prior to the time such owner-employee attains 59½ years of age, except in the case of disability. H. Rept. 378 at 272–273, 280; S. Rept. 992 at 323–324, 334. In the event an owner-employee receives a distribution from the plan in contravention of section 401(d)(4)(B), section 72(m)(5)[4] imposes an additional tax on the distribution. Section 401(d)(5)(C) also provides:

(d) ADDITIONAL REQUIREMENTS FOR QUALIFICATION OF TRUSTS AND PLANS BENEFITING OWNER-EMPLOYEES.—A trust * * * shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a), the following requirements of this subsection are met by the trust and by the plan of which such trust is a part:

> \*  \*  \*  \*  \*  \*  \*

(5) The plan does not permit—

> \*  \*  \*  \*  \*  \*  \*

(C) if a distribution under the plan is made to any employee and if any portion of such distribution is an amount described in section 72(m)(5)(A)(i), contributions to be made on behalf of such employee for the 5 taxable years succeeding the taxable year in which such distribution is made.

The petitioner points to the words "the plan" and argues that section 401(d)(5)(C) is clear and only prevents an owner-employee from participating in the plan from which he received a

---

[4](m) SPECIAL RULES APPLICABLE TO EMPLOYEE ANNUITIES AND DISTRIBUTIONS UNDER EMPLOYEE PLANS.— * * *

 \*  \*  \*  \*  \*  \*  \*

(5) PENALTIES APPLICABLE TO CERTAIN AMOUNTS RECEIVED BY OWNER-EMPLOYEES.—
 (A) This paragraph shall apply—
  (i) to amounts * * * which are received from a qualified trust described in section 401(a) * * * and which are received by an individual, who is, or has been, an owner-employee, before such individual attains the age of 59½ years, for any reason other than the individual's becoming disabled (within the meaning of paragraph (7) of this subsection), but only to the extent that such amounts are attributable to contributions paid on behalf of such individual (whether or not paid by him) while he was an owner-employee,

 \*  \*  \*  \*  \*  \*  \*

 (B)(i) If the aggregate of the amounts to which this paragraph applies received by any person in his taxable year equals or exceeds $2,500, the increase in his tax for the taxable year in which such amounts are received and attributable to such amounts shall not be less than 110 percent of the aggregate increase in taxes, for the taxable year and the 4 immediately preceding taxable years, which would have resulted if such amounts had been included in such person's gross income ratably over such taxable years.
  (ii) If deductions have been allowed under section 404 for contributions paid on behalf of the individual while he is an owner-employee for a number of prior taxable years less than 4, clause (i) shall be applied by taking into account a number of taxable years immediately preceding the taxable year in which the amount was so received equal to such lesser number.
 (C) If subparagraph (B) does not apply to a person for the taxable year, the increase in tax of such person for the taxable year attributable to the amounts to which this paragraph applies shall be 110 percent of such increase (computed without regard to this subparagraph).

premature distribution. On the other hand, the Commissioner refers us to statements in the legislative history setting forth the purpose of these requirements and contends that the statute is unclear and must be given a broader interpretation to carry out the declared legislative purpose. In describing the deterrents to premature distributions, H. Rept. 378 at 273, states:

A penalty is imposed by the bill in cases where a premature distribution of all or part of the retirement fund is made before the owner-employee reaches age 59½. In these cases, if the premature distribution amounts to $2,500 or more, the tax imposed would not be less than 110 percent of the increase in tax that would have resulted if the income had been received ratably over the 5 years ending with the year of distribution. * * * If the premature distribution amounts to less than $2,500, the tax due would be 110 percent of the increase in tax resulting from inclusion of the entire amount of the premature distribution in gross income for the current year. * * * As a further penalty in case of a premature distribution, the owner-employee is disqualified from participating in a retirement plan on his own behalf for 5 years following the year in which the total distribution is made. These penalties are imposed in order to prevent retirement plans from, in effect, becoming income-averaging plans under which deductible contributions would be made to the plan in high-income, high-tax years and the assets would be drawn down in low-income or loss years when little or no tax would be due. It is the purpose of this bill to provide means for financing retirement; these penalties are designed to insure that retirement plans will not be used for other purposes.

For a similar statement, see S. Rept. 992 at 324–325.

The statute is, of course, the most authoritative expression of the legislative will, and the legislative history may not be used in derogation of an unequivocal expression of the legislative purpose. However, it has been our experience that the English language is rarely so precise that words can have only one reasonable meaning, and the language used in section 401(d)(5)(C) is another example of such imprecision. The statute merely provides that when there has been a premature distribution, contributions must be prohibited. It does not indicate whether the prohibition applies *only* to contributions to the plan from which the premature distribution was received, or whether the prohibition applies to contributions to any qualified retirement plan. Thus, we are compelled to consider the several possible interpretations of the statute, examine their effect, look to the legislative history, and adjudicate what interpretation carries out the legislative purpose. See *United States v. Gilmore,* 372 U.S. 39, 44–45 (1963); *Doing v. Commissioner,* 58 T.C. 115,

129 (1972); *Southern California Loan Association v. Commissioner*, 4 B.T.A. 223, 233–234 (1926).

If section 401(d)(5)(C) were interpreted to apply only to the plan from which the premature distribution was received, the objective of discouraging premature distributions could easily be circumvented. Whenever an owner-employee wished to withdraw the funds in his present plan, he could simply terminate that plan and withdraw the funds; thereafter, he could establish a new plan and participate in the tax benefits of a plan qualifying under section 401. Such a possibility demonstrates convincingly that the words "the plan" were not intended to make the prohibition applicable only to the plan from which the premature distribution was received.

The statements in the committee reports show that Congress expected the penalty provisions of section 72(m)(5) and the prohibition of section 401(d)(5)(C) both to apply to a premature distribution. After describing the penalties of section 72(m)(5), the reports state that "As a further penalty in case of a premature distribution, the owner-employee is disqualified from participating in a retirement plan on his own behalf for 5 years following the year in which the total distribution is made." Such language is clear and leaves no doubt as to the scope of the prohibition.

In the case before us, the petitioner had participated in the first plan for only 3 years, and the total distribution to him was less than $3,000. In addition, he terminated the first plan because of his change in business arrangements. Nevertheless, those facts do not warrant a decision on behalf of the petitioner. Even though his participation in the first plan was limited, the applicable rule is the same as if he had participated for 20 years and received $20,000. Since he was not disabled and had not yet reached the age of 59½, the distribution to him, be it small or large, was a premature distribution subject to the penalty of section 72(m)(5) and, in like manner, the prohibition of section 401(d)(5)(C). Despite his move to the partnership, he could have left the funds in the first plan, and it is clear that Congress expected them to be left there.

The petitioner suggests that the second plan met the express requirement of section 401(d)(5)(C) since the parties stipulated that such requirement was satisfied. However, regardless of whether the plan did contain such a provision, the petitioner did

not consider it to be applicable to him, and the situation is the same as if the plan contained no provision prohibiting his participation. Therefore, we hold that his contributions during the years at issue were not deductible.

Finally, the petitioner urged us to adopt his interpretation of section 401(d)(5)(C) for two additional reasons. First, he argued that section 1.401–12(m)(1)(ii), Income Tax Regs.,[5] requires such an interpretation. However, that regulation merely paraphrases the language of section 401(d)(5)(C), contains the same basic ambiguity as the statute, and is not at all inconsistent with our conclusion. Second, the petitioner argued that our interpretation of section 401(d)(5)(C), while proscribing contributions for 5 years succeeding the year of the premature distribution, would not prevent a contribution in the year of such distribution. For purposes of this case, we need not decide whether an owner-employee can contribute to a qualified retirement plan in the same year of, but after receiving a premature distribution, since those facts did not occur in any of the years at issue in this case.

*Decision will be entered for the respondent.*

---

[5](ii) A qualified plan must provide that if, despite the restrictions in the plan to the contrary, an amount is prematurely distributed, or made available, to a participant in such plan who is, or has been, an owner-employee, then no contribution shall be made under the plan by, or for, such individual during any of the 5 taxable years of the plan beginning after the distribution is made.